IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 15-00029-1 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AMBROSIO D. CONSTANTINO, JR., | ) | |
| and FRANKLIN R. BABAUTA, | ) | |
| | ) | |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FRANCES TYDINGCO-GATEWOOD
CHIEF JUDGE
DECEMBER 16, 2015; 3:02 P.M.
HAGATNA, GUAM


**Chambers Teleconference**


Proceedings recorded by *mechanical stenography*, transcript produced by computer.

Veronica F. Reilly, CSR No. 2004
Federal Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: MARIVIC DAVID, AUSA,**
**ROSETTA SAN NICOLAS, AUSA,**
**ALICIA LIMTIACO, USA**
108 Hernan Cortez Avenue
Sirena Plaza, Suite 500
Hagatna, Guam 96910


Appearing on behalf of defendant Constantino:


**LAW OFFICE OF FISHER & ASSOCIATES**
**BY: THOMAS J. FISHER, ESQ.**
Suite 101, De La Corte Building
167 East Marine Corps Drive
Hagatna, Guam 96910


ALSO PRESENT:

Rossanna Villagomez-Aguon

I N D E X

|  | Page |
|---|---|
| Government to file motion to extend | 33 |
| Government to withdraw motion to seal | 34 |

Veronica F. Reilly, CSR No. 2004
Federal Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

```
1              December 16, 2015; 3:02 p.m.; Hagatna, Guam

2                              * * *

3

4              THE COURT:  Okay.

5              MS. DAVID:  Your Honor, this is Marivic.

6              THE COURT:  Okay, Marivic David.  And then that

7    was you, Tom Fisher?  Right?

8              MR. FISHER:  Yes, Your Honor.  Good afternoon.

9              THE COURT:  Good afternoon.  And then Rosetta?

10             MS. SAN NICOLAS:  Yes, Your Honor.  Good

11   afternoon, Your Honor, Rosetta San Nicolas.

12             THE COURT:  Okay.  And I also invited Alicia

13   Limtiaco only because it appears in the diversion agreement,

14   she's the only one -- she's the one that will make the offer,

15   right?  According to the agreements?  On diversion, Ms. David?

16             MS. DAVID:  Yes, Your Honor, through our office;

17   correct.

18             THE COURT:  Right.  Okay.  But she doesn't need

19   to be here if you're going to be the one taking over, right?

20   Answering for this?

21             MS. DAVID:  We -- we've alerted Ms. Limtiaco,

22   through her secretary, about this conference call and we're

23   waiting to see.

24             THE COURT:  Okay, that's fine.  We'll go ahead

25   and proceed then.  So I just want to say *U.S. of America v.*
```

1  *Ambrosio D. Constantino, Jr.*, Criminal Case 15-29.  I do have

2  my court reporter here in my chamber.  So I wanted to get a

3  hold of you before I issued any orders on this.

4         There's an application to seal documents and

5  agreement for pretrial diversion filed under seal by the U.S.

6  Attorney's office.

7         First of all, let me just say, I'm -- it's still

8  not consistent with the speedy trial clock language under 18

9  U.S.C. 3161(h) -- (h)(2).  Right.  Two.  This was the -- this

10  was the one that we discussed Rosetta and -- Ms. San Nicolas

11  and Mr. Fisher, in Court?

12         MR. FISHER:  Yes, Your Honor.

13         THE COURT:  Okay, so that's my concern.

14  Secondly, so I can't -- let's see.  You know, in terms of the

15  diversion for Mr. Constantino, I've already preliminary

16  approved this -- you know, with that draft agreement that you

17  all submitted, right?  You recall that, right?  So I feel that

18  that preliminary is able to toll the speedy trial clock.  But

19  the problem is this agreement for pretrial diversion is --

20  well, it doesn't have any room for the Court to sign off on,

21  number one.  And under the statute for -- for these type of

22  deferred pleas, it requires a judge to sign off on it and

23  approve it.  And then secondly, on the -- so, can you answer

24  to that.  I don't know who prepared this?  I guess Ms. San

25  Nicolas or --

1          MS. SAN NICOLAS:  Your Honor, I did.  Rosetta San

2   Nicolas.  Your Honor, we essentially followed the form that

3   the Department of Justice uses.  It is -- which does have the

4   signature for the probation -- chief probation officer.  We

5   can amend it and add the Court's signature and, Your Honor,

6   Alicia -- okay, Your Honor, I'm sorry.

7          THE COURT:  Yeah, sure.

8          MS. SAN NICOLAS:  We can add the Court's

9   signature to that pretrial diversion document.

10         THE COURT:  Well, I guess philosophically, we

11  just have to figure out, should the Court even approve

12  diversions.  I mean -- and is there any internal agreement

13  with yourselves and the U.S. -- U.S. Probation.  As I

14  understand it, there is none.  There has not been one made.

15  There's been no formal agreement, and of course Ms. David was

16  in Court yesterday when defense counsel got very upset and

17  felt like maybe the U.S. Attorney's office is not being fair

18  in their treatment of offering diversion on these type of

19  cases.  Whether that's true or not, I don't know.  That could

20  develop later, but I think that there just needs to be some

21  kind of transparency.

22         And first of all, which cases are -- which type

23  of cases are eligible for diversion.  I mean, you guys have no

24  internal -- the U.S. Attorney's office, as I understand it,

25  Ms. David, you're the criminal chief, as I understand it, you

1    guys have not prepared one of those.  Right?  With the U.S.

2    Probation?

3                    MS. LIMTIACO:  Your Honor, this is Alicia

4    Limtiaco.  I just walked into the room.

5                    THE COURT:  Okay.  And Mr. Fisher is on the line

6    too, as well, Ms. --

7                    MS. LIMTIACO:  Oh, Tom Fisher?  All right.  Thank

8    you.  So just my understanding is that the Court would like

9    the government to -- I was told there is an MOU--

10                   THE COURT:  Well, no, you guys have -- hold on a

11   second.  Hold on.  Hold on a second.  Where is that... as I

12   understand it, your particular -- I think your particular U.S.

13   Attorney's manual requires that there be an MOU with U.S.

14   Probation and Pretrial.

15                   MS. LIMTIACO:  Right, so I see here a sample from

16   the District of Hawaii that was forwarded to us.  I think this

17   was one that Roxanne, you know, provided as sort of a sample.

18                   THE COURT:  Well, I think what happened was I

19   asked her to find out what other jurisdictions have and I

20   actually pulled up the Northern District of California.  They

21   have a more extensive one.  They even -- they talk about

22   deferred pleas and so forth, deferred guilty pleas and their

23   program is like deferred guilty plea diversion -- I mean,

24   entry -- re-entry Courts and so forth, or type of

25   evidence-based Courts.

1      So I just -- because there has not been anything

2  formalized, I think we need to do this.  I think we need to

3  have it more formal to figure out what's going on.  And this

4  is what I told your attorneys last week, Ms. Limtiaco and just

5  now, is that the trial for Mr. Fisher's client, Constantino,

6  was set -- you know, was set last week and we were supposed to

7  call in the jury.  And then this agreement came before the

8  Court for consideration.  And under the speedy trial clock, it

9  says any period of delay, this -- I was citing to, as you may

10  recall, 3161(b)(2) -- (a)(2), I'm sorry, (a)(2), (a)(H)(2),

11  yeah, 3161(a)(H)(2).  A -- let me see if I got that right.

12  Wait.  Hold on a second.  3161(h)(2).  All right.  So it's

13  "any period of delay during which prosecution is deferred by

14  the attorney for the government pursuant to a written

15  agreement with the defendant with the approval of the Court

16  for the purpose of allowing the defendant to demonstrate his

17  good conduct."  Right?  That's where we were under in order to

18  toll the speedy trial clock.

19      So the agreement -- first of all, the agreement

20  that you guys submit is not consistent with that language

21  because it has no place for the approval of the Court.  And

22  secondly, the issue of sealing to demonstrate good conduct,

23  that doesn't -- that that's good conduct for purposes of the

24  release conditions, I don't feel that's like the reasons --

25  the Court has not given -- allowed that type of reasoning to

1    seal a document. You guys are asking me to seal it and I'm

2    just not sure if that's appropriate. I can see if it was like

3    a precharge -- no, precharge is you guys wouldn't even come

4    into Court, if it was like a lipstick case, which you guys

5    have had, the SAUSA's have had. In fact, I looked at the

6    pretrial diversion statistics and there's a lot. The special

7    assistant U.S. attorneys have filed. I'm looking at 26... 50

8    -- you guys have had 65 -- 66 pretrial diversion cases since

9    2005, according to the statistics here; U.S. Attorney's

10   office. And all these are misdemeanor s, right? I think more

11   -- 99.9 percent of them are and there's just no procedure.

12           So now we have Mr. Fisher's client who comes in

13   on a felony, and I think we just need to figure out first of

14   all, is the Court going to accept these kind of pretrial

15   diversions and then who qualifies for them, because most

16   pretrial diversions will say, okay, this type of person, like

17   if Constantino, because I asked Rosetta San Nicolas, Why is

18   Mr. Constantino getting this plea -- I'm sorry, this

19   alternative disposition for prosecution? And she said,

20   Because you know, Mr. Babauta, the co-defendant, basically

21   exculpated him and that Constantino really only received 200

22   rather than 2,000. Am I correct on that, Ms. San Nicolas?

23           MS. SAN NICOLAS: Your Honor, that is correct.

24           THE COURT: Right. And I think those are the

25   only two and he was a first-time offender, right?

1           MS. SAN NICOLAS:  Correct.  It was the son that

2     exculpated him and --

3           THE COURT:  Okay, the son.

4           MS. SAN NICOLAS:  -- the two have the same name

5     as the --

6           THE COURT:  The co-defendant?

7           MS. SAN NICOLAS:  Correct.

8           MS. LIMTIACO:  And also, Your Honor, this is

9     Alicia again, I think -- and correct me if I'm wrong, Rosetta

10    -- but I believe -- it's my understanding that when the

11    reference to the -- Mr. Babauta's son, who is a witness in

12    Mr. Constantino's case, the exculpatory information is one

13    that also goes to the knowledge of Mr. Constantino being

14    involved in a sort of recruiter context and that that was

15    understood by the son, or by the witness, Babauta.

16          And so there was this -- it was not the sort of

17    typical fact pattern that we would have in the G-RAP cases.

18    And so because of this additional information and that, you

19    know, we needed to assess really the culpability of Mr. --

20    reassess the culpability of Mr. Constantino and the government

21    believes that this would be a fair and reasonable disposition

22    of Mr. Constantino's case.

23          And because Mr. Babauta, the father of this

24    witness who would have testified in Mr. Constantino's case, is

25    also sort of part of this -- there's -- you know, there's a

1    relationship; they're family members, they're -- you know,

2    they were all sort of involved in the series of communications

3    or transactions.  We thought it to be efficient and prudent to

4    also offer the same disposition, proposed disposition in that

5    case rather sort of to have it hanging there.  We wanted to

6    make sure we were addressing --

7                THE COURT:  Okay.

8                MS. LIMTIACO:  -- both cases fairly.

9                THE COURT:  I'm not sure if I understand what

10   you're saying, but can I just ask you, maybe this will help

11   me, in the theft case, in the theft count, it says that

12   Constantino knowingly stole and converted in the amount of

13   approximately $2,000.  But according to Ms. San Nicolas,

14   that's not true.  It wasn't that he knowingly stole and

15   converted 2,000; it was actually 200; is that correct?

16               MS. SAN NICOLAS:  Your Honor, he -- he -- he did

17   convert 2,000, however, he didn't retain it.  He only -- he

18   retained $200 at the end and then 1,800 went to the father,

19   the co-defendant Babauta.

20               THE COURT:  Oh, okay.  So that's what -- with

21   regard to that.  Then the second charge of Ambrosio

22   Constantino, without lawful authority, knowingly possessed and

23   used means of identification of another person.

24               MS. SAN NICOLAS:  Correct, Your Honor.  That is

25   -- the importance of that count -- or rather the strength of

1   that count was weakened by the additional clarification

2   provided by the son.  The son, William Babauta, was

3   reinterviewed and stated that he actually provided his

4   personal information to Constantino.

5               THE COURT:  Oh, okay.  So William Babauta did --

6   okay, so W.R.B. is William R. Babauta, right?

7               MS. SAN NICOLAS:  Yes.

8               THE COURT:  This is the son.  So Babauta said he

9   gave it to him, and so it's not that Constantino had unlawful

10  -- did not have lawful authority, it's just that Babauta is

11  not saying -- he's exculpating and saying, I gave him the

12  information and he didn't get it illegally or without

13  authority?

14              MS. SAN NICOLAS:  Right, Your Honor.

15              THE COURT:  Okay, so that --

16              MR. FISHER:  Your Honor, if I may interject?

17              THE COURT:  Okay, sure.

18              MR. FISHER:  Thank you.  Everything the U.S.

19  Attorney's representing is of course true, but I wanted to

20  kind of give you a little more context, Your Honor.

21              THE COURT:  Okay.

22              MR. FISHER:  In an interview with the FBI, my

23  client stated that he had not spoken to the son.  And the son

24  initially confirmed that, but then the son -- I suppose it was

25  in the nature of a retraction -- then said that he had in fact

1    spoken to my client.

2                 So the fact pattern, it's a little complicated

3    but I want the Court to know the full, you know -- the entire

4    context.

5                 THE COURT:  I'm sorry, so initially your client

6    denied speaking to Babauta?

7                 MR. FISHER:  Correct.

8                 THE COURT:  And then Babauta -- and then your

9    client retracted and said, Oh, I did speak to him or he spoke

10   to me?

11                MR. FISHER:  No, Your Honor, my son -- or my

12   client didn't retract; the son did.  Franklin Babauta's child

13   initially said I agree that he had not spoken to my client,

14   but then in a second interview, said that he believes he had.

15   I can't recall his exact phrase.  So the son gave two

16   statements.

17                THE COURT:  Okay, but in relation to the second

18   charge, as far as the personal identifying information, is

19   that relevant to what you've just told me?

20                MR. FISHER:  Well, it will would be if the son

21   actually had spoken to my client, then the second charge would

22   fall away.

23                THE COURT:  Right.  So essentially -- so

24   essentially, he did speak to your client?

25                MR. FISHER:  Um, I guess I can only speak to what

1  I've received in discovery from the son and the son, in a

2  second statement, said that he -- I recall that he had -- he

3  said he had spoken to my client.  Is that correct, Rosetta?

4              MS. LIMTIACO:  Your Honor, this is Alicia.  I

5  think this is -- again to just provide a little bit more

6  context -- my understanding is what Mr. Fisher said, however,

7  in the subsequent interview or reinterview of Mr. Babauta's

8  son, witness, the witness himself, he had clarified what -- he

9  had tried to clarify what he said in his first statement and

10 he indicated that the context of the first interview was not

11 clear to him.  And in an effort to provide further

12 clarification of the -- I think the first statement was really

13 a telephonic interview.  It wasn't an in-person interview --

14 was not an in-person interview, so in the subsequent in-person

15 interview, he wanted to make sure he clarified his initial

16 statement since he was given more context.  And so that's how

17 the second statement was provided and so that hopefully will

18 provide a little bit more context.

19             THE COURT:  Okay.  So the first statement that

20 Babauta -- William Babauta said is "I didn't speak to

21 Constantino" and the second statement was "well, maybe there

22 was some issue and let me clarify I did speak to him"?

23             MS. LIMTIACO:  Right, right.

24             THE COURT:  Okay.  I got that.  But the thing is

25 he said he spoke to him and therefore -- Constantino --

1    Babauta spoke to Constantino and Constantino said he never

2    spoke to him, they never spoke.

3              MS. SAN NICOLAS:  Right.  And that was -- which

4    is the odd part, Your Honor, because -- that's his written

5    confession.

6              THE COURT:  No, but if Constantino says we've

7    never spoken and now you have Babauta saying we did speak, and

8    by the way, I gave him the personal identifying information

9    with -- so there's no issue of without lawful authority.

10   Right?

11             MR. FISHER:  Right, then -- assuming the truth of

12   William Babauta's second -- I'm not sure was there actually a

13   third interview with him?  Assuming the truth in the second

14   interview with William Babauta, then there is not an issue of,

15   in my opinion -- I don't know what the U.S. Attorney thinks

16   -- but -- of unlawful use of the identification.

17             THE COURT:  Right, that's what I'm saying.  So --

18   so it makes it look like Constantino is not telling the truth.

19             MR. FISHER:  Well, because --

20             MS. LIMTIACO:  As you can see, Your Honor,

21   there's some questions here about --

22             THE COURT:  Okay.  Well, okay.  All right.  Well,

23   all right.  So you've made your decision on offering a

24   diversion.  I understand that.  But I guess fundamentally, we

25   have to decide as a Court, me and Judge Manibusan, have to

1    decide if, A, we're going to approve these type of agreements,

2    whether it's diversion or deferred guilty plea, I think that's

3    something that we need to talk about, because it's been --

4    it's been kind of -- it's just been loose.  And for whatever

5    reason, it's just hasn't been focused on.  And then Mr. Fisher

6    walks into Court and -- with his client and so now -- now it

7    comes into the felony level which it rarely does and we just

8    have to somehow address it and I need to make sure the speedy

9    trial clock is protected and so forth.

10            So that's why I'm looking at this and this whole

11   issue of sealing, so I think the sealing is incorrect.  I

12   don't think the Court can do it.  There's no basis to do it.

13   And then with regard to the agreement that's before me, I

14   don't think it's consistent with the statute for deferred --

15   for deferral of prosecution.  And also, Alicia, you guys have

16   to -- I think you guys have to come up with some kind of --

17   some kind of memorandum of what constitutes eligibility for

18   diversions.

19            MS. LIMTIACO:  Your Honor, if I may ask, earlier

20   you referenced was it the District of north -- Northern

21   California or North Carolina?

22            THE COURT:  No, northern district, federal court,

23   Northern District of California.  I just started reading this

24   today.  They have different types of agreements.  They have

25   pretrial diversion, post plea diversion, pre-plea diversion,

1  deferred -- diversion, deferred sentencing courts, I mean,

2  they -- it's very -- it's very -- I haven't had a chance to

3  review it carefully but I just kind of flipped through it,

4  there's I think like 17 pages.  So I was reviewing this after

5  I received Mr. -- Rosetta San Nicolas and Mr. Fisher's

6  paperwork, just trying to fill -- I think we just need to come

7  up with some kind of formal -- formal procedure.

8            MS. LIMTIACO:  Okay.  So Your Honor, is the -- we

9  were just looking at the facts that we received here from

10 Rossanna Villagomez-Aguon and we do not see the District of

11 Northern California but we can certainly go on the website.

12            THE COURT:  No, so what Rosetta did was I asked

13 her to -- I mean Rosetta -- Rossanna, you just went and put

14 out an e-mail out to all the chief probation officers?

15            PROBATION OFFICER:  Yes.

16            THE COURT:  And she only received eight back.

17 But that doesn't mean that I've looked at those carefully.  In

18 fact, I just started looking on my own because Rossanna just

19 gave me the Hawaii one but that doesn't seem like it's

20 updated.  Its an old one she received sometime ago and she

21 hasn't heard from Flo -- is it Flo?  Is it who you're waiting

22 for.

23            PROBATION OFFICER:  Carol, the chief probation of

24 Hawaii.

25            THE COURT:  She's waiting for Carol.  But I just

1    started doing my own research and I looked at the Northern

2    District.  Again, we just haven't had enough time to digest.

3    I don't think any of us have.

4                    MS. LIMTIACO:  Okay.  So if -- if -- so Your

5    Honor, just to again make sure we're clear on our end and we

6    can certainly work on with Mr. Fisher and with Rossanna of

7    course, the Court is requesting that we look at perhaps an

8    agreement or MOU between our office and the probation office

9    or pretrial services and these are some of the samples that we

10   received the facts and then the Court has also referred us to

11   the Northern District of California samples, and so we can

12   look at that.  That's one issue we understand the Court would

13   like us to move forward on.

14                   And then the second is obviously the --

15   specifically to this case involving Mr. Fisher's client, that

16   we -- well, the sealing is definitely not something that the

17   Court believes is appropriate, so that's fine; we can address

18   that and not go forward on that.  And then -- and as we move

19   forward with Mr. Fisher's client's case --

20                   THE COURT:  You know, here's the concern I have

21   about this particular agreement, I mean, it doesn't -- it has

22   all this language that really, to me, may -- may -- may be

23   really appropriate for precharging, but if the Court is going

24   to be involved and in some jurisdictions, the Court is

25   involved and I think that in our Court, once it's charged,

once it's filed and charged and there's an expectation that

the judge has -- either myself or Judge Manibusan -- and I've

spoken to Judge Manibusan about this just briefly, but once

it's charged, it's in Court, it's filed, and Judge Manibusan

and I have to review it and determine is Mr. Constantino, for

example, has he successfully completed the diversion.  And we

need to know somehow, how do we know that?  You guys -- the

way that it's set up here is -- it's just -- it's that okay,

it's at the U.S. Attorney's sole discretion to determine

whether he or she has -- has satisfied the diversionary

requirements, and also, and it has some language too in here

and maybe I'm wrong, I can't remember if it's one of them, but

in conjunction maybe with the U.S. Probation Office's input,

and then so the Court never -- neither myself nor Judge

Manibusan, we have no idea whether or not they've completed

it.  And it just says that the case will be dismissed.  And it

has to be dismissed by the Court.  It can't be dismissed by

U.S. Probation or U.S. Attorney's office just on their own.

So I think we just have to figure out what type

of diversion is this.  You know, there's just -- there's

different types of diversions.  To be honest with you, maybe

you don't want to hear this, Mr. Fisher, but I think it's

easier for the Court to have deferred guilty pleas, you know.

It's just a lot easier, and you know, I'm not saying that -- I

think that the statute, that speedy trial statute that I

1  referred to, when it says deferred -- any period of delay

2  during which prosecution is deferred, I think that does

3  include diversions.  I'm not saying it's only deferred guilty

4  pleas.

5              MR. FISHER:  Understand.

6              THE COURT:  Yeah.  I mean do you agree with that?

7  Because I think -- yeah, I do think in fairness to the defense

8  and to the prosecution.  I do think it allows for that.  But

9  it's interesting and I'm not -- let me just say, Ms. Limtiaco,

10 I'm not saying that I am endorsing any one of these ones that

11 Rosetta [sic] is sending to you.  Rosetta [sic] is just

12 pulling that out just to give you guys samples and let me see

13 it.

14             MS. LIMTIACO:  Rossanna, Your Honor?

15             THE COURT:  Right.  And I just pulled up the

16 Northern District and I haven't read it completely so I'm not

17 saying that I necessarily agree with it.  All I know is like

18 -- some of these agreements -- some of these diversion

19 agreements or deferred agreements have a sentencing Court.

20 And it's a conviction alternative program that they have in

21 Northern District.  I remember speaking to the Chief Judge

22 Hamilton sometime ago.  I think they just recently put this

23 together in the last two or three years if I'm not mistaken.

24 But anyway, so you know, we just have to figure this out and

25 come to some kind of understanding that's consistent in the

1    local -- downstairs with Judge Manibusan on misdemeanor cases.

2    Because I didn't realize that we have over 60 diversion

3    agreements in the -- and most of them downstairs, and most of

4    them are misdemeanors.

5                    MS. LIMTIACO:  So Your Honor --

6                    THE COURT:  I don't know, did you know that,

7    Alicia?

8                    MS. LIMTIACO:  Well, not in terms of the numbers

9    but the SAUSA cases, as I understand, is where the diversion

10   agreements were had.

11                   THE COURT:  Uh-huh?

12                   MS. LIMTIACO:  So, Your Honor?

13                   THE COURT:  Yeah.

14                   MS. LIMTIACO:  In terms of a particular case,

15   would it be, you know, fine with the Court if given the

16   various samples that we have now in front of us, perhaps we

17   can work with Mr. Fisher --

18                   THE COURT:  Yeah.

19                   MS. LIMTIACO:  - to make another proposal to the

20   Court now that we're aware of the Court's concerns about the

21   current submission.

22                   THE COURT:  Right.

23                   MS. LIMTIACO:  And we can do that.

24                   THE COURT:  Yeah, I think so.  And I think also

25   -- yeah, I think we need to -- yeah, I think it -- it also has

1  to be consistent with some kind of procedure that you all have

2  with U.S. Probation and their -- their role.

3           MS. LIMTIACO:  Yes.  And that was actually the

4  other point that we would need to bring in the probation

5  office, so Rossanna, in the conversation, so that -- right,

6  that there's -- that we're all sort of coordinating here.

7           THE COURT:  Yeah, because we need to figure out

8  what's the role -- I mean, that's one of the things I asked

9  Rosetta, what's the role of the U.S. Attorney's office.  They

10 determine eligibility -- I assume you guys will say okay, this

11 is what constitutes eligibility for diversion.  You as U.S.

12 Attorney, you're saying these are the type of people we want

13 to offer diversion to.  And say they're -- you know,

14 first-time offenders, you know, it's not a violent crime;

15 whatever, whatever -- you guys have all these different

16 things.

17          MS. LIMTIACO:  Yes, you're correct, Your Honor,

18 there is eligibility criteria.

19          THE COURT:  That's right.  So then the role for

20 -- then the role for U.S. Probation essentially is -- and

21 that's why I asked Rosetta -- I mean, Rossanna, what is your

22 role?  Is your role, what?  I think it really sounds like

23 their role is to say is this person suitable for diversionary

24 supervision.  There's no issues with that person.  And for

25 example, Rossanna was saying like there's no mental health

1    issues that can't be handled or can be handled during their

2    diversionary period.  Rossanna also said -- correct me if I'm

3    wrong, Rossanna -- you said like can they afford restitution

4    if there's like a $200 restitution, right?  Is there any --

5              PROBATION OFFICER:  Their criminal history.

6              THE COURT:  Yeah, first-time offender -- but that

7    -- that's really more something that's an eligibility

8    requirement though that Alicia and her team would require.

9              PROBATION OFFICER:  As well as their ability to

10   succeed and their -- their ability to succeed on supervision

11   as well as the likelihood of them reoffending as well.  So...

12   but in terms of restitution, that can be assessed and the

13   cases that we've received from the U.S. Attorneys office from

14   the SAUSAs, restitution was never an issue because it was

15   either paid, already paid or the items were returned.

16             THE COURT:  And another thing, Ms. Limtiaco, is

17   -- so the language of may recommend termination of pretrial

18   diversion at which time the Court may release you from

19   supervision any time, that's okay, that's fine.  I think

20   that'll be fine with me and Judge Manibusan.  I think the one

21   thing is -- is that how do we know -- how does the Court know

22   that the defendant has fulfilled the terms of the diversion

23   agreement?  So that the Court can make an informed decision

24   that dismissal is appropriate?  And I see in some of these

25   courts -- but these again are kind of like -- you know it's

kind of wedded in, you know, deferred guilty plea as opposed

to diversion.

I mean, I honestly think, you know,

philosophically that some cases definitely, you know, qualify

for diversion. I mean if it's like a -- what's her name,

Rossanna is saying like downstairs in the misdemeanor cases,

they have like somebody stole lipstick, that even sounds like

it should be precharge diversion and they actually have

precharge diversion. But I don't think you guys do, do you,

Alicia? And U.S. Attorney -- SAUSAs, you guys don't allow

that or you haven't been allowing that?

MS. LIMTIACO: Not to my knowledge, Your Honor.

THE COURT: Yeah. So like small stuff like that,

I can see that being precharge and it has nothing do with the

Court. The Court shouldn't be involved. You guys can do that

on your own. But once it comes into the Court, I think the

Court has to have some type of review, you know, whether it's

a status hearing, to determine if the person has fulfilled the

terms of the diversion and then signing off on it. I think

that's necessary. So maybe just, you know, if you guys can

redraft this diversion agreement. And for purposes of -- for

purposes of Constantino, based on what you -- based on what

Rosetta San Nicolas said in Court and what you guys just said

now, and you're saying that this qualifies and that --

especially because this exculpatory issue or cases of

1    sufficiency of proof, then yeah, the Court is in agreement,

2    and I told that to Mr. Fisher and Ms. San Nicolas that I'm in

3    agreement in concept for the pretrial diversion.  Okay?

4              MS. LIMTIACO:  Yes, Your Honor.  So we will

5    definitely work with Mr. Fisher and Ms. Villagomez on looking

6    at revisiting this agreement.  And then with regards to the

7    specific case but then also looking at that MOU that you

8    referenced earlier between our office and probation.  And I

9    think there was a question in terms then of the upcoming

10   hearing date for this case and I'm gonna ask Rosetta to go

11   ahead and I guess clarify that.

12             MS. SAN NICOLAS:  Your Honor, there's a filing

13   hearing date of December -- a filing day of December 21, 2015,

14   where the Court requested that the diversion be submitted.

15             THE COURT:  Right.

16             MS. SAN NICOLAS:  May we -- we would request an

17   extension.

18             THE COURT:  Okay, just file that.  Just file a

19   motion to extend that and I'll grant that.  Is that because

20   you want to fix up the language?

21             MS. SAN NICOLAS:  Yes.  Yes, Your Honor.

22             THE COURT:  I assume that you do.  And I think --

23   and Ms. Limtiaco, maybe this is a good time for you really to

24   look at the issue of -- honestly, you know, precharge, post

25   charge, whatever, deferred guilty plea, diversion, whatever

1   qualifies.  I think that'll be very helpful to the Court, it

2   will be helpful to me and Judge Manibusan, certainly, and I

3   think it will be helpful to the bar.  To the bar too.  Because

4   yesterday there was a case and defense counsel got upset and

5   whether it's rightfully so or not, I don't know, like I just

6   indicated.  But yeah.  I don't know.  I just think that you

7   know, if we're gonna make it available to Mr. Fisher's client

8   or any other client, then anybody similarly situated, I'm sure

9   that you guys would be fair and offer it to the same kind of

10  -- same kind of defendant.

11              MS. LIMTIACO:  Yes, Your Honor.

12              THE COURT:  Right?  Okay.  Mr. Fisher, is there

13  anything -- oh, okay, let me just say on page 2 of this

14  agreement, this proposed agreement that you have here in Court

15  today, line 14, it says, okay, "therefore on the authority of

16  the attorney general by Alicia Limtiaco, U.S. Attorney for

17  Guam and CNMI, prosecution in this district for this offense

18  shall be deferred for the period of 12 months from this day,"

19  you might want to just say really from the date the agreement

20  is signed and entered by the Court.  You might want to say

21  that rather than the date that it was just filed in the Court.

22  Do you see what I'm saying there?  Rosetta?  Ms. San Nicolas?

23              MS. SAN NICOLAS:  I do, Your Honor.

24              THE COURT:  Okay.

25              MS. SAN NICOLAS:  So the suggestion is "shall be

1    deferred from the period of -- for this date, the agreement

2    was signed and entered in Court?"

3              THE COURT:  Yeah, so instead of saying deferred

4    for the period of 12 months from the day, from this day, it

5    should be from the date -- from the date the agreement is

6    signed and entered by the Court.  Because you don't even have

7    -- like you also have a requirement that Rossanna Aguon signed

8    it but she hasn't signed it either.  And --

9              MS. LIMTIACO:  So different dates.

10             THE COURT:  You have different dates.  Well, you

11   have -- yeah, you have different dates of signing.

12             MS. LIMTIACO:  Right.

13             THE COURT:  So if she signs this after it's --

14   it's -- what date are we looking at?  From this date, what

15   date is that?

16             MS. SAN NICOLAS:  We intended to put the date

17   that Rossanna approved it.

18             MS. LIMTIACO:  Well, I think, Your Honor, we'll

19   go ahead and make the change that you're recommending.  So

20   it's very clear from which date.

21             THE COURT:  And I think too, I think we -- I

22   think in the internal operating agreement, it will become

23   clear what exactly is -- what exactly is the role of probation

24   and what exactly are they approving?  They're not necessarily

25   approving the eligibility for diversion because that's what

1    you guys determine.  And they're not exactly approving the

2    ability for that to go through Court because that's what the

3    Court will do.  But what they're approving is what?  I think

4    the -- I think Rossanna said the suitability for pretrial

5    conditions of release.

6              PROBATION OFFICER:  Diversion for the program and

7    supervision.

8              THE COURT:  For the program.  We just have to

9    figure out what the program is.  I don't know.  Anyway, I

10   think it will work out.   Hold on one second.  Hold on.  Also

11   too, just on page -- do you have the agreement, Mr. Fisher and

12   Ms. San Nicolas?

13             MR. FISHER:  No, Your Honor.  I'm sorry, I don't

14   have it in front of me.

15             THE COURT:  Okay, do you have it, Rosetta San

16   Nicolas?

17             MS. SAN NICOLAS:  I do, Your Honor.  It is the

18   Department of Justice standard.  But I do have it before me.

19             THE COURT:  Okay, so on page 3, line 3, it says

20   "after successfully completing" blah-blah-blah, "no

21   prosecution for the offense set out on page 1," actually, it's

22   also page 2, the charges were set out on page 1 and 2, I'm

23   just doing proofing on this.  You see what I'm saying?

24             MS. SAN NICOLAS:  Yes, Your Honor.

25             THE COURT:  Okay.  "Will be instituted by this

1   district and the charges against you, if any, will be

2   dismissed."  Well, I don't think that's appropriate because

3   there is charges already against him.  So "if any" should be

4   deleted.  So -- right?

5          MS. SAN NICOLAS:  Yes, Your Honor.

6          THE COURT:  I think.  Yeah, it just makes sense.

7   It should say "and charges against you will be dismissed"

8   because the charges are the first two charges.  Yeah.  Yeah.

9   And then also on the last page 5, then you know, again, I

10  guess once you get the internal agreement -- and we should

11  discuss that.  Maybe you guys can get some templates and look

12  at it and we'll at it too, but we just have to figure out

13  philosophically how the -- you know, what the Court -- me and

14  Judge Manibusan will agree to in terms of what kind of

15  diversion or, you know, I mean, you guys -- post-plea

16  diversion, is this a guilty -- this is not a guilty plea

17  diversion.  This is a diversion.  Yeah, this is just a

18  pretrial diversion.  But it is a post plea because he's

19  already pled not guilty.  Anyway, there's just different types

20  that are offered, so Ms. Limtiaco --

21         MS. DAVID:  Your Honor, Alicia had to step out

22  for a few seconds to tell the folks in her other meeting --

23  she'll be right back.

24         THE COURT:  Okay, that's fine.  That's fine.  But

25  okay, so, Ms. David, because you're the chief there, criminal

1  chief, so yeah, why don't you guys figure out how you want to

2  do this.  You know, what kind of diversions are we having

3  here.

4          MS. DAVID:  Sure, Your Honor.  We're gonna work

5  with Rossanna and we want to thank Rossanna for the samples

6  she's already provided so far and hopefully we'll also receive

7  the other samples she has referenced earlier.

8          THE COURT:  Yeah, and again, let me just say,

9  some of these samples though I think are not consistent with

10  the statute, by the way.  Just because it's been going on for

11  a while doesn't mean it's right.  So that's why I told

12  Rossanna, I was looking at some of these samples and I don't

13  think that they're consistent with the rules or the speedy

14  trial stuff.  In fact, some of the samples actually say the

15  U.S. Attorney's office and the defense counsel have to figure

16  out what are the speedy trial exclusions, but we have to make

17  sure it's consistent with the law in order to toll the clock.

18  And the only one that I can see really legitimately is the one

19  I pointed to on the deferred prosecution.  Okay?

20          MR. FISHER:  Yes, Your Honor.  Should I -- from

21  defense standpoint, should I be anticipating a new diversion

22  offer prior to the MOU being in place or the other way around?

23          THE COURT:  Well, I assume those guys are gonna

24  try to get everything together.

25          MR. FISHER:  Yes, Your Honor.

```
 1                THE COURT:  Right, Ms. David?

 2                MS. DAVID:  Your Honor, we're guided by the

 3   status hearing.  I think there was a date sometime --

 4                THE COURT:  Next week or -- a week and a half

 5   from now.  Right?

 6                MS. DAVID:  In March.

 7                THE COURT:  March?

 8                MS. DAVID:  And we -- we will work with Tom

 9   Fisher and Your Honor and Rossanna's office in trying to get

10   an MOU in place.

11                THE COURT:  Right.  Okay.  So the question is how

12   quickly can you get an MOU in place and how quickly can you

13   get a diversion agreement in place.  Because we have --

14                MS. DAVID:  Rossanna and Your Honor referenced

15   samples, especially ones from the Northern District of

16   California, we would like to take a look at that as well as

17   the other samples.

18                THE COURT:  Yeah, okay, but remember, Marivic, I

19   haven't looked at that very carefully.  I just pulled up just

20   some of the programs, so I'm not vouching for any of them.

21                MS. DAVID:  Okay, well --

22                THE COURT:  Just FYI, because I just looked at it

23   like honestly, literally, like an hour ago.

24                MS. LIMTIACO:  I'm sorry, Your Honor, so I'm

25   back.  I apologize.  I had to -- as we were on hold, I just
```

1  needed to step out for a moment but I'm back.

2           THE COURT:  Okay.

3           MS. LIMTIACO:  So we recognize that the Court has

4  not approved any of these samples.  We will just review it,

5  and just make perhaps a suggestion to the Court knowing that

6  the Court of course will make the final decision on what the

7  Court believes is the most appropriate approach, but we can

8  certainly review all of the samples and --

9           THE COURT:  Yeah.

10          MS. LIMTIACO:  And provide a recommendation.

11          THE COURT:  Yeah.  And I really think once you

12  guys determine what kind of diversions you want to do and then

13  the eligibility, you know, all the timing and then the Court's

14  involvement, then we'll have a better idea once we have that

15  concept down, then I'll be able to apply it and Judge

16  Manibusan and I will be able to apply it to how we proceed

17  with this alternative prosecution.  Okay?

18          MS. LIMTIACO:  Yes, Your Honor.

19          THE COURT:  Okay.  So -- yeah, so -- okay, well

20  good luck.  What is the date set, Mr. Fisher, for the next

21  hearing?

22          MR. FISHER:  I think it's March -- I want to say

23  March 9th.

24          THE COURT:  We'll keep March 9th on.  But I

25  thought we had to have -- I ordered that --

1          MR. FISHER:  Right, December 21st, Your Honor.

2          THE COURT:   Right.  So Rosetta, you're going to

3   ask that be continued for what, another few weeks after that?

4   Or?

5          MS. SAN NICOLAS:  Your Honor, we will file a

6   motion to extend the filing date at least four weeks.

7          THE COURT:  Okay.  That's fine.  Go ahead and

8   submit that.  And you have no objection to that, Mr. Fisher?

9          MR. FISHER:  No objections, Your Honor.

10          THE COURT:  All right.  Again, and I'll say this

11   for the record, because the Court has already indicated that I

12   agree in concept the intention of the diversion agreement, as

13   it relates to Constantino only, the Court believes that the

14   speedy trial clock is being tolled properly under 18 U.S.C.

15   3161(h)(2).  Okay?

16          MR. FISHER:  Yes, Your Honor.

17          THE COURT:  Okay.  All right.  Any other

18   questions, Ms. Limtiaco?

19          MS. LIMTIACO:  No other questions, Your Honor.

20          THE COURT:  How about you, Ms. San Nicolas -- or

21   I'm sorry, Ms. David?

22          MS. DAVID:  No, Your Honor.  Thank you.

23          THE COURT:  Okay.  Thank you, and Ms. San

24   Nicolas?

25          MS. SAN NICOLAS:  No, Your Honor.  Thank you.

```
 1                THE COURT:  All right.  So I have these
 2    paperworks you guys have filed.
 3                MS. SAN NICOLAS:  Your Honor, we'll -- I'll send
 4    someone over to withdraw the paperwork and motion to seal.
 5                THE COURT:  You're withdrawing those paperworks?
 6    They haven't been docketed.
 7                MS. SAN NICOLAS:  All right.  We'll retrieve
 8    them, Your Honor.
 9                THE COURT:  Wait, wait, hold on.  Let me see.
10    Hold on one second.  Okay, here's the problem:  I'm just going
11    -- you know what, the originals here, actually I thought I was
12    given copies and I wrote all over the originals as I was -- I
13    was proofing it and kind of going through it.  So I've written
14    all over it.
15                MS. LIMTIACO:  Can we have your notes?
16                (Laughing.)
17                THE COURT:  Sure.  Okay.  All right.  You're
18    withdrawing it.  Fine.  That's fine.  I'll let you guys
19    withdraw it.  So I won't be making any rulings here at this
20    point.  But I'll just wait until you guys submit the proper
21    paperwork.  Okay?  But I'm willing to work on this.  And by
22    the way, I spoke to Judge Manglona, she and I had a good talk
23    about this the other day on diversions and she indicated that
24    the U.S. Attorney's office in Saipan, you guys have deferred
25    guilty pleas.
```

1          MS. LIMTIACO:  It was a -- that was a-- I believe

2    that's referring to the Tinian Dynasty casino case, Your

3    Honor.

4          THE COURT:  Is that the one?

5          MS. LIMTIACO:  Yes.

6          THE COURT:  Okay.  Yeah, Judge Manglona talked

7    about that.

8          MS. LIMTIACO:  Yeah, I believe that's the one.

9    And in that case and -- it was quite a complicated situation.

10          THE COURT:  Right.  I remember her saying that.

11    All right.  Very well.  All right.  Let's get it going.  Thank

12    you everyone then, I'll talk with you guys soon.

13          MR. FISHER:  Thank you, Your Honor.

14          MS. LIMTIACO:  Thank you very much.

15          (Proceedings concluded at 3:49 p.m.)

16                    *  *  *

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER


CITY OF HAGATNA      )
                     )  ss.
TERRITORY OF GUAM    )


        I, Veronica F. Reilly, Official Court Reporter for
the United States District Court of Guam, do hereby certify
the foregoing pages, 1 to 35, to be a true and correct
transcript of the proceedings held in the above-entitled
matter.
        Dated this 27th day of January, 2016.


                          /s/Veronica F. Reilly
                          Veronica F. Reilly