IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM


UNITED STATES OF AMERICA,   ) Criminal Case No. 15-00029-1,
                       ) and 15-00029-2
           Plaintiff,  )
                       )
        vs.          )
                       )
AMBROSIO D. CONSTANTINO, JR., )
and FRANKLIN R. BABAUTA,    )
                       )
          Defendants. )


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FRANCES TYDINGCO-GATEWOOD
CHIEF JUDGE
JANUARY 8, 2016; 10:48 A.M.
HAGATNA, GUAM


**Status Hearing**


Proceedings recorded by *mechanical stenography*, transcript produced by computer.

Veronica F. Reilly, CSR No. 2004
Federal Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: MARIVIC DAVID, AUSA,**
**ROSETTA SAN NICOLAS, AUSA,**
**ALICIA LIMTIACO, USA**
108 Hernan Cortez Avenue
Sirena Plaza, Suite 500
Hagatna, Guam 96910


Appearing on behalf of defendant Babauta:


**LAW OFFICE OF LUJAN & WOLFF**
**BY: DAVID J. LUJAN, ESQ.**
DNA Building, Suite 200
238 Archbishop Flores Street
Hagatna, Guam 96910


Appearing on behalf of defendant Constantino:


**LAW OFFICE OF FISHER & ASSOCIATES**
**BY: THOMAS J. FISHER, ESQ.**
Suite 101, De La Corte Building
167 East Marine Corps Drive
Hagatna, Guam 96910


ALSO PRESENT:

Joe Strantz, FBI

I N D E X

| | Page |
|---|---|
| The Court to hold the matter under advisement until Monday morning | 54 |

Veronica F. Reilly, CSR No. 2004
Federal Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

1          **January 8, 2016; 10:48 a.m.; Hagatna, Guam**

2                              * * *

3          THE CLERK:  Criminal Case No. 15-00029, *United*

4  *States of America versus Ambrosio D. Constantino, Jr., and*

5  *Franklin R. Babauta*; status hearing.

6          Counsel, please state your appearances.

7          THE CLERK:  I don't have the government.

8          THE COURT:  You can be seated, Mr. Lujan.

9          THE CLERK:  Please come to order.  This is

10  Criminal Case No. 15-00029, *United States of America versus*

11  *Ambrosio D. Constantino, Jr., and Franklin R.  Babauta*; status

12  hearing.

13          Counsel, please state your appearances.

14          MS. SAN NICOLAS:  Buenas yan Hafa Adai, Your

15  Honor, Rosetta San Nicolas, on behalf of United States.

16          MS. DAVID:  Good morning, Your Honor, Marivic

17  David, with the United States, and Agent Joe Strantz, from the

18  FBI is also here, as well as U.S. Attorney Alicia Limtiaco.

19          THE COURT:  Okay.  Good morning U.S. Attorney

20  Limtiaco, Ms. David, Ms. San Nicolas, and Agent Strantz.

21          AGENT STRANTZ:  Good morning, Your Honor.

22          THE COURT:  Good morning.

23          MR. FISHER:  Good morning, Your Honor.  My name

24  is Thomas Fisher.  I'm an attorney representing Mr. Ambrosio

25  Constantino, who is standing here to my right.

1              THE COURT:  Okay.  Good morning, Mr. Fisher,

2    again, and Mr. Constantino.

3              THE DEFENDANT:  Good morning, Your Honor.

4              MR. LUJAN:  Good morning, Your Honor, David

5    Lujan, with Mr. Babauta.

6              THE COURT:  Good morning, Mr. Lujan and

7    Mr. Babauta.  Sorry for the delay.  I was in Bankruptcy Court

8    all morning, so we just got out.  Okay.

9              I understand you all want to meet with me in

10   chambers first; is that right?

11             MS. DAVID:  If that is still the inclination of

12   Mr. Fisher and his client, we would have no objection, and

13   yes, for the government.

14             THE COURT:  All right.

15             MR. LUJAN:  Yes, Your Honor.

16             THE COURT:  We'll do that then.  And then I'll

17   make sure that -- be sure that I memorialize what was said in

18   chambers as well.  Okay.  Let's go.

19             MR. LUJAN:  I take it we're invited?  Are we

20   invited or no?

21             MR. FISHER:  Your Honor, our preference is that

22   we have this conference with the Court.

23             THE COURT:  Okay.  I guess you're not invited.

24   (Laughing.)  You're uninvited.  You're unfriended.

25             MR. LUJAN:  I know.  Unfriended.  That's okay.

1  Thank you.

2                 THE CLERK:  Court's in recess.

3                 THE COURT:  Get the right lingo there.

4                 THE CLERK:  All rise.

5                 (Recess taken at 10:51 a.m. until 11:43 a.m.)

6                 THE COURT:  Please be seated.  We'll call the

7  cases.  Well, I'll call both cases.

8                 Oh, no, you already did, right, Carmen?

9                 Okay.  We're back on the record.

10                We've had an in chambers conference at the

11  request of Mr. Fisher on behalf of Mr. Constantino.

12                So let me just put on the record, memorialize it

13  on the record, so we won't have any attorneys here feel like

14  they've been left out, Mr. Lujan, and the others.

15                But there was -- so essentially, what was brought

16  out was that there was a diversion plea offered to

17  Mr. Constantino by the prosecution and that's still alive and

18  it has been accepted by the -- by Mr. Constantino.  And the

19  Court had preliminarily accepted it and now the Court has

20  concerns about that and is considering not accepting it based

21  on comments made by the other assistant U.S. Attorneys in the

22  Babauta case.

23                And then the Court notes that I had concern about

24  the treatment of Sergeant Blas, which was a case -- a G-RAP

25  case also before this Court and prosecuted by the same

prosecutor, Ms. David.

And oh, for the record, the persons inside my chambers were Alicia Limtiaco, U.S. Attorney; Marivic David, chief of the criminal section; Rosetta San Nicolas, assistant U.S. Attorney; my U.S. chief probation officer, Ms. Rossanna Villagomez-Aguon, the defense counsel, Mr. Fisher, for Constantino.

We also discussed the issue that Major Constantino, Lieutenant Colonel Babauta, and Sergeant Blas all were charged with two felonies, the same felonies, theft and aggravated identity theft.

Blas was offered -- actually, Blas had to plead guilty to the two felonies and was never offered diversion or misdemeanor, as I understand it, because I was the federal judge in that matter.

Major Constantino, as I've already indicated, was offered diversion and that's still on the table.

Lieutenant Colonel Babauta was offered a diversion. Initially, the Court rejected that. And then we set this matter for trial. Trial was supposed to begin Tuesday of this week, the 5th of January. And then on the 4th of January, Monday, the prosecutor and defense counsel, Mr. Lujan, submitted a plea agreement, misdemeanor plea agreement and then we had a long discussion about who was more culpable between Mr. Babauta and Mr. Constantino, what the

prosecutor, Ms. David, had indicated her assessment of the

litigate narrative risks involved in this case.

And the things that were pointed out at -- that

have already been pointed out in this Court previously is that

Mr. Constantino was a recruiting assistant just as Sergeant

Blas was.  And I bring up Sergeant Blas because Mr. Gorman,

the federal public defender, went a little crazy in my Court

recently, when -- or got a little excited in this Court when

we had the diversion issue brought before me on the

Constantino matter.

And so, you know, when the Court reflected upon

that, I wanted to be sure there was no disparity in treatment

between Major Constantino, Lieutenant Colonel Babauta, and

Sergeant Blas.  And then I also note for the record that it

was stated that Mr. Babauta was not a recruiting assistant.

At least that's the factual basis.

And so one of the issues that was brought up

again in chambers was the fact that -- and this is the

question that I did ask -- why -- does ranking -- why -- does

ranking make a difference when you all issued these offers?

You have a major, a lieutenant colonel versus a sergeant,

major, or lieutenant colonel, as I understand, having been in

the National Guard a lot longer period of time than the

sergeant.  And I was told by the Assistant U.S. Attorney at

the time that, yes, it did, it was a factor, but it was not a

1    conclusive factor.

2              And then in the -- that was stated on the record

3    here in Court.  But in chambers, I was told by the U.S.

4    Attorney, Ms. Limtiaco, that that's not necessarily true, that

5    that was their rank at the time.  So historically, that was

6    their rank.  But again, the Court was relying on their ranks

7    -- I mean, the comments by the prosecutors giving the offer --

8    strike that.  Yeah, the facts in the case.

9              And then there was this issue -- well, the

10   Sergeant Blas case is a traditional G-RAP case versus this

11   case of Mr. Babauta, Mr. Constantino, which is not a

12   traditional G-RAP case.  And they talk -- you know, I still

13   don't understand necessarily that distinction.  Maybe one of

14   these prosecutors can re-explain that.

15             But I -- I -- yeah, they can explain it more

16   eloquently than I can repeat that.  They talked about like

17   there was a recruiting assistant issue between the Blas case

18   and then the Babauta/Constantino case.

19             And so we're left here right now with the issue

20   of -- oh, and the U.S. Attorney's Office is indicating that --

21   I think it's their intention to -- well, I'm not sure.  Let

22   know just ask them.

23             What's their intention regarding the diversion

24   agreement that has already been made -- or diversion offer

25   that has already been made and accepted by Constantino?

1        And let me just also say that the reason why I

2   called Mr. Fisher into Court with his client was because I was

3   told -- and this is important to me in terms of -- as a judge

4   assessing agreements before the Court that I look at the

5   culpability of the defendants.  And the prosecutor indicated

6   at one point that they -- that Babauta -- Mr. Babauta,

7   Mr. Constantino were equally culpable, however.  Then the

8   prosecutor said, No, no, no, actually, Mr. Constantino is more

9   culpable.

10       So when the matter was brought before me on

11   Mr. Constantino's -- at Mr. Contantino's hearing, it was my

12   impression that Mr. Constantino only got two hundred bucks,

13   which I don't think that's in dispute, approximately $200 of

14   the $2,000 that was stolen from the United States government.

15   And that this was his first offense and that there was a

16   change in circumstance in that he was no longer -- there was

17   no longer really an aggravated identity theft -- a strong

18   aggravated identity theft charge.  It was on shakier ground.

19       So that was presented to me previously before.

20   Mr. Lujan came in quite aggressively and forcefully for his

21   client and argued for his client on some of these issues.

22       So that's where we are now.  And we have the

23   diversion agreement for Constantino before the Court and then

24   Mr. Lujan's case, with his client, Mr. Babauta, is a

25   misdemeanor plea agreement.

1          So I just reiterate that I am concerned that

2     there has been disparity and it's not just -- okay, I will say

3     this, because this was brought up before, and the U.S.

4     Attorney has asked me to say that she felt like that they

5     should be given a chance to really explore this issue of

6     treatment of diversion even in misdemeanor cases.  So I

7     brought this up that, as I understand it, there was a

8     misdemeanor case downstairs in Judge Manibusan's Court where a

9     defendant who was young -- is it 19 or 21?  Twenty-one?

10          PROBATION OFFICER:  Twenty years old, Your Honor.

11          THE COURT:  Twenty years old -- this is my chief

12     probation officer, Rossanna Villagomez-Aguon -- had indicated.

13     And just as a point of comparison and concern, had said that a

14     20-year-old who was a good student had stolen, with his

15     girlfriend, some makeup at the Naval Exchange and had wanted a

16     diversion offered and was denied that by the prosecutor and

17     ended up having to get a misdemeanor conviction.  And is that

18     correct?

19          PROBATION OFFICER:  That is correct, Your Honor.

20          THE COURT:  Right.  And so -- anyway, we're

21     getting these -- you know, I understand this is a new thing

22     the U.S. Attorney's office is embarking on, in felony cases.

23     But as a result of this, now we have the situation where the

24     Court obviously will examine this very carefully.  Diversion

25     in felony cases are important, just as they are important in

1    misdemeanor cases.  Some cases are worthy of diversion.  You

2    have a petty theft and maybe, you know, there's no problems

3    with a criminal history and so forth, it might very well be

4    acceptable by the Court.

5              Anyway, so here we are.  So I'll ask the

6    prosecutor, U.S. Attorney's office, with regard to Constantino

7    agreement, that still -- what is the status of that?  I mean,

8    other than what I already stated.

9              MS. SAN NICOLAS:  Your Honor, the pretrial

10   diversion agreement was extended to the defendant as we

11   represented to the Court on December 7, 2015.

12             Your Honor, cases and the facts that are --

13   current cases that are being reviewed and re-reviewed and Your

14   Honor --

15             THE COURT:  I'm sorry, which kind of cases?

16   These type of cases?

17             MS. SAN NICOLAS:  In any case, Your Honor.

18             THE COURT:  Oh, any case.

19             MS. SAN NICOLAS:  The facts that are occurring

20   are constantly being reviewed and re-reviewed.  Your Honor, in

21   light of the -- in light of the review of the case, we would

22   at this time note that the pretrial diversion agreement should

23   be taken off the table and is not available to Defendant

24   Constantino.

25             THE COURT:  What about the fact that he's already

1  accepted it?  I mean, isn't there a contract now that's been

2  made?  And is there -- do you think there might be an issue?

3         MS. SAN NICOLAS:  Your Honor, we submitted the

4  signed document to the Court.  The understanding, Your Honor,

5  was that the pretrial services division would be conducting a

6  -- almost a -- a type of a presentence report.  And then

7  afterwards, the -- probation conducted the report, the Court

8  would have the pretrial diversion before and the Court could

9  sign.  And we just note, Your Honor, that the pretrial

10 diversion has not been accepted by the Court and has not been

11 signed.

12        THE COURT:  Yeah, but that's not my question.

13 Well -- I think that might be a little off.  It has been

14 accepted by the defense, right?  The pretrial diversion offer,

15 has that been accepted by the defense counsel?

16        MS. SAN NICOLAS:  It has been signed, yes, by the

17 defendant.

18        THE COURT:  So it has --

19        MS. SAN NICOLAS:  Ambrosio Constantino.

20        THE COURT:  So it has been accepted by the

21 defense?

22        MS. SAN NICOLAS:  As I understand it, Yes, Your

23 Honor, and was submitted to the Court.

24        THE COURT:  Right.  And it's been submitted to

25 the Court.  What's pending is the assessment by the U.S.

1   Probation Officer as to the suitability of the defendant to be

2   under supervision for diversion, right?

3               MS. SAN NICOLAS:  Yes, Your Honor.

4               THE COURT:  Does that sound right?  And so for

5   purposes of the Speedy Trial Act under 18 U.S.C. 3161, the

6   only way a deferred guilty plea could be -- can toll the

7   speedy trial clock is if an offer was -- I mean, a plea or

8   diversion or deferred plea was filed and accepted, and filed

9   with the Court and accepted.  So that has been the case before

10  us.

11              Do you agree with that?  Or do you disagree?  And

12  after you answer that, I'll let Mr. Fisher speak.

13              MS. SAN NICOLAS:  Yes, Your Honor.  May I just

14  have a moment, Your Honor.

15              THE COURT:  Yeah.

16              (Pause.)

17              THE COURT:  Ms. San Nicolas, do you agree with

18  me?

19              MS. SAN NICOLAS:  Your Honor, when we appeared in

20  Court, the provision that we cited was 3161(h)(2).

21              THE COURT:  Right.

22              MS. SAN NICOLAS:  And Your Honor, it does cite

23  with the approval of the Court for the purpose of allowing a

24  defendant to demonstrate his good conduct.  We argue, Your

25  Honor, that it is conditional and that the Court had not

1  approved it.

2          THE COURT:  Right.  But -- no, but my question is

3  that they have -- they have accepted it.  That's the issue.

4          MS. SAN NICOLAS:  Your Honor, we -- we do agree

5  that the defendant Ambrosio Constantino signed and entered

6  into the agreement and that --

7          THE COURT:  Okay.  So -- go ahead, I'm sorry.

8          MS. SAN NICOLAS:  And that the document, Your

9  Honor, was filed with the court.

10          THE COURT:  So you're saying though that you can

11  take it off the table right now?  You feel that you can, you

12  have the authority -- you have the legal authority to take it

13  off the table?

14          MS. SAN NICOLAS:  Uh -- Yes, Your Honor.  Yes,

15  Your Honor.  And that is in light of the recognition, Your

16  Honor, that the defendant, as to defendant Babauta, that that

17  agreement has been -- has not been accepted by the Court.  So

18  we anticipate that the Court would similarly reject the

19  pretrial diversion agreement as to Constantino.

20          THE COURT:  Yeah, but -- okay, all right.

21          Mr. Fisher, can you come -- actually, can you

22  make sure you guys speak at the podium.

23          MR. FISHER:  May I approach, Your Honor?

24          THE COURT:  Yes, I'm sorry -- for my court

25  reporter.

```
1                MR. FISHER:  Your Honor, our position as to the

2    United States' authority to withdraw the diversion is that

3    they cannot at this point, that we do have a contract, and

4    that I was just exploring with my client whether or not he's

5    actually begun to essentially perform under the diversion

6    agreement.  And --

7                THE COURT:  Hm-hmm.  He said yes?

8                MR. FISHER:  Well, I was just trying to get into

9    some of the facts with him.

10               THE COURT:  You want to talk to him then or?

11               MR. FISHER:  May I have a moment?

12               THE COURT:  Yeah.

13               MR. FISHER:  Thank you.

14               (Pause.)

15               THE COURT:  Yes, Mr. Fisher?

16               MR. FISHER:  Yes, thank you, Your Honor.  I spoke

17   to Mr. Constantino and we spoke about what followed our

18   entering the diversion agreement, our signing the diversion

19   agreement.  He said he had begun to cooperate with -- I guess

20   it would be pretrial services, that he was being evaluated to

21   see if he was eligible.  He was cooperating with Mr. Jeffery.

22   I'm not familiar with that gentleman.

23               THE COURT:  Ventura, the U.S. Probation officer?

24               THE DEFENDANT:  Yes, Your Honor.  I received an

25   e-mail as well as a phone call and he told me what he needed
```

1   and I responded to it via e-mail to let him know that I'm

2   trying to find all these things.  In fact, I sent him an

3   e-mail saying that I have found my VA veterans affairs -- what

4   do you call this -- medical assessment.  Basically they gave

5   me 40 percent disability but I was having difficulty in

6   finding my packet where I retired from the military.  And then

7   I received -- so this is via e-mail.  And I also spoke to.

8   Ms. Santos, who is my pretrial service officer.

9               THE COURT:  Okay.  Melinda Santos.  All right.

10              THE DEFENDANT:  And in fact, when I received a

11  phone call on Saturday saying that there was a diversion, I

12  immediately notified Ms. Santos, so that she's aware of what's

13  going on, because I was told that anything that has to do with

14  this case, please let her know.

15              THE COURT:  Okay.

16              THE DEFENDANT:  So on my behalf, even without

17  being told anything, I went ahead and started telling

18  Ms. Santos, keeping in contact with her, letting her know

19  that, you know, I plan on going to school, I plan on starting

20  my own business, because of the diversion.  So I started

21  moving on so that...

22              Your Honor, when the prosecutor offered this to

23  me, I started looking for how do I start -- because I resigned

24  from -- as the Homeland advisor.  And the reason why I

25  resigned was because we had a disaster.  We had a presidential

1  declaration that was submitted, and I resigned because I did

2  not want to stop that process.  We still had people in

3  shelters, we still had people that needed support.  And I

4  resigned because I was gonna be a vegetable.  I did not know

5  how to respond to this case.

6          So when the diversion came, I said, Hey, let me

7  help.  I went back to American Red Cross and I said,

8  Ms. Chita, I know I'm no longer the chairman for the Health &

9  Safety Committee as a volunteer but can I come back and

10  volunteer, to help volunteer?  I was gonna start talking about

11  the lifeguard situation here on Guam.  So I started asking

12  them, Can I help you get that the program going?  Because when

13  I got called up in May, basically the indictment, I basically

14  dropped everything and the lifeguard program stopped.

15          As an example, we were doing lifeguard training

16  January, February, March, April, May.  And then May, it

17  basically went to a standstill.  As the chairman for American

18  Red Cross, I was a volunteer since '94.  I resigned on that.

19  As a deacon of the Baptist church, I even told the pastor, Let

20  me resign.  I went ahead and I -- because of that diversion I

21  went and asked them, Can I come back and start helping the

22  church again?  I was even helping with the veterans when I got

23  the indictment.  And at that point, I just completely stopped.

24  So everything I was doing I stopped.

25          Your Honor, I resigned because of the business

1   that I wanted to do.  I went ahead and did a business.  I got

2   a business license at the end of the year.  And I approached

3   Ms. Cynthia Cabot, who was my boss, and I said, Let me resign,

4   I'll give you my two-weeks' notice, and she said, Thank you

5   very much for it.

6           Again, it was because of the diversion that was

7   agreed upon, I started moving forward and hoping that this

8   would -- is over because again, I have a lot faith that the

9   government, once they make that kind of offer... my life needs

10  to move on, Your Honor.

11          For me to continue this, all of a sudden, I need

12  to tell Chita Blaise, Chita, I have this in black and white,

13  but I'm sorry this diversion has been removed because

14  whatever.

15          Your Honor, I gotta go back to the church and

16  say, Your Honor -- the diversion -- I don't want to implicate

17  the government nor the people that I support whether it's the

18  American Red Cross or the church or any other organization

19  that I helped, I don't want them to be questioning why is

20  Ambrosio Constantino, who's under indictment, still working

21  for you?  Or still helping you out?

22              THE COURT:  Okay.  Thank you.

23              THE DEFENDANT:  I mean...

24              MR. FISHER:  Your Honor, our position is that we

25  do have enforceable contract.

1          THE COURT:  I'm sorry, can you... okay, go ahead.

2          MR. FISHER:  Your Honor, our position is that we

3    do have a contract and Mr. Constantino had even begun to alter

4    his position based upon representations of the United States

5    and the fact we had entered a diversion and keeping in mind of

6    course that the Court had not yet accepted it.

7          THE COURT:  Well, in -- for purposes of the --

8    for purposes of the Speedy Trial Act, the Court had

9    preliminary -- had done that, honestly, to be honest with you,

10   based on the representation of the offer of proof, really, and

11   what was stated to me.

12         MR. FISHER:  Yes, Your Honor.

13         THE COURT:  That'll -- that -- that -- I mean, I

14   did.  And especially because we got the Speedy Trial Act under

15   deferred plea, the case has to be -- the agreement has to be,

16   as you know, filed and accepted by the Court.  So -- so

17   actually -- all right.  Okay.  So that's your position.  Thank

18   you.

19         MR. FISHER:  Yes.  We don't think the United

20   States has authority to withdraw it based on change of heart.

21         THE COURT:  I think you may be right on the issue

22   of contract law with plea agreements and so forth.

23         MR. FISHER:  Thank you.

24         THE COURT:  Yes, I'll just confirm with my chief

25   probation officer.  So is that true that the --

1   Mr. Constantino has met with Jeffery Ventura, U.S. Probation

2   Officer and Mindy Santos?  Do you know?

3            PROBATION OFFICER:  Your Honor, Jeffery Ventura

4   is -- Probation Officer Jeffery Ventura is assigned to conduct

5   the pretrial diversion investigation and they have not met yet

6   to conduct -- other than telephonic, they have not met to --

7            THE COURT:  They haven't met in person.

8            PROBATION OFFICER:  They have not met in person

9   to begin the interview process.  Probation officer Melinda

10  Santos is his pretrial --

11           THE COURT:  Officer.

12           PROBATION OFFICER:  -- supervision officer.  So

13  he is currently on pretrial release and under the conditions

14  of the Court.

15           THE COURT:  So they haven't met in person but

16  they've met through, like, e-mails?  Do you know?  Or that

17  exchange?

18           PROBATION OFFICER:  That's my understanding from

19  --

20           THE DEFENDANT:  I can forward the e-mail if it

21  you want.

22           PROBATION OFFICER:  That's fine, Mr. Constantino.

23           THE COURT:  We can verify that.  I think you have

24  met because Mr. Ventura did tell me that you guys are already

25  in contact with each other.  So I recall him telling me that

1   recently.  Yeah.  Okay.  So we accept your word and we'll

2   reconfirm that.

3                  PROBATION OFFICER:  Your Honor, last week at

4   Mr. Babauta's hearing, we were instructed by the Court to stop

5   the investigation, so that has not moved forward since.

6                  THE COURT:  All right.  Okay.  Very well.  Okay.

7   Thank you.

8                  MR. FISHER:  Thank you.

9                  THE COURT:  All right.  Yes, Mr. Lujan, you want

10  to come up to the podium and speak?

11                 MR. LUJAN:  Of course, Your Honor.

12                 THE COURT:  Oh, wait, wait, before you do, Ms.

13  San Nicolas, do you want to respond to Mr. Fisher's position

14  that you guys -- the prosecutors have made an agreement,

15  they've accepted it, and they don't believe that you have the

16  authority to revoke it.

17                 MS. SAN NICOLAS:  Your Honor, we submit.  Thank

18  you.

19                 THE COURT:  Do you disagree with him?  What's

20  your response to that?  Honestly, preliminary, I think he's

21  right.

22                 MS. SAN NICOLAS:  Your Honor --

23                 THE COURT:  Contract law.

24                 MS. SAN NICOLAS:  Your, Honor, I understand, Your

25  Honor --

1          THE COURT:  But do you think he's wrong?

2          MS. SAN NICOLAS:  Your Honor, the defendant is

3    making an argument that he's detrimentally relied on the

4    contract, that he complied.  Your Honor, the contract that was

5    offered, that was not accepted by the Court and does contain

6    provisions --

7          THE COURT:  Well, I think it has been -- for

8    purposes of the Speedy Trial Act, it has been preliminarily

9    accepted.  I did say that.  I had to say that on the record

10   because of the -- because of the Speedy Trial Act.  It says

11   filed and approved.

12         MS. SAN NICOLAS:  Your Honor, we will just note

13   that at this time the defendant hasn't performed on this

14   contract.  He hasn't paid the $2,000, plus the administrative

15   fee to the Army National Guard.  And Your Honor, that's an

16   indication that he has not performed the contract.

17         THE COURT:  But also, were you -- you guys were

18   all trying to put your internal agreement together to figure

19   out how you wanted to conduct diversion felony agreements,

20   right?

21         MS. SAN NICOLAS:  Yes, that's correct.

22         THE COURT:  And your office has not completed

23   that at this point?

24         MS. SAN NICOLAS:  Also correct, Your Honor.

25         THE COURT:  Right.  So I mean, part of that is

1    still going on.  I mean, that's -- that's an issue and there

2    really is no other amended diversion agreement that would

3    reflect some of the changes that were recommended at the

4    Constantino hearing -- that has not been filed yet here in the

5    Constantino matter; correct?

6              MS. SAN NICOLAS:  That is correct, Your Honor.

7              THE COURT:  Okay.  All right.  Okay.

8              Yes, Mr. Lujan.

9              MR. LUJAN:  Well, obviously, Your Honor, I'm

10   praying that you'll accept Mr. Constantino's argument.  Yes?

11   Because I believe that whatever the argument is, applies to my

12   client.  And, you know, in this case, we came before the

13   Court, also on this pretrial diversion.  And you know, at that

14   point, because of the Court's, I believe -- I think it's

15   worthwhile rehashing, at least some of what -- you know, some

16   of what I remember.  But, you know, the Court raised the issue

17   of Sergeant Apatang-Blas.  And you know, of course the

18   disparity --

19             THE COURT:  John Gorman shouldn't have brought

20   that up.

21             MR. LUJAN:  I'm glad he did.

22             THE COURT:  Yeah.  But he did.

23             MR. LUJAN:  That's right.  But, you know, in any

24   event -- and because of that, I believe the Court -- you know,

25   the Court had reservations about accepting it.  And then of

course the Court had -- you know, the chief probation officer

explained about the pretrial diversion program and that it was

really basically limited to petty misdemeanor type, I believe.

You know, $100, $200.  And generally, where, you know, the

victim also is -- you know, the perpetrator didn't even take

the thing, he just got caught and, you know, of course

charged.  But the victim didn't suffer any loss or if there

was a loss, it was a very small loss.

THE COURT:  Yeah, but in the case that was cited

to me was that the victim did get the property returned.  The

victim, which was the Naval Exchange, I understand.

MR. LUJAN:  Yes.

THE COURT:  And property was less than -- they

did not get the diversion benefit.

MR. LUJAN:  Oh, I thought that -- that's what I

was hearing.

THE COURT:  They did not get it.

MR. LUJAN:  Oh, okay.  And I was weary --

THE COURT:  That's why I was saying that -- my

concern was that we have a misdemeanor -- we have a

misdemeanor theft like that, which is less than $200, and we

have a $2,000 case or $200 case, if you will, with

Mr. Constantino, and he gets diversion.  So it just seemed

disparate.

MR. LUJAN:  I believe the point I was trying to

1  make is that the diversion program the Court had, you know,

2  was much limited, you know, in loss, which, you know, as

3  opposed to what's going on in this case.  Okay.  And so, you

4  know, as a result of that, the Court said that, you know, the

5  Court was not going to accept our diversion.  And in that

6  case, you know, we came before the Court and as -- you know,

7  as you asked Mr. Fisher, we came with a signed deal.

8  Mr. Babauta also signed his agreement.  And so, you know, of

9  course we argue that there was a contract.  And --

10             THE COURT:  No, no, no.  I mean, yes, but I

11 hadn't accepted it yet.

12             MR. LUJAN:  No, I understand.

13             THE COURT:  I mean, that's the difference.

14             MR. LUJAN:  Well, probably, you know.  But I'm

15 saying that, you know, we signed it.  And because of the

16 Court's concern, you know, of course we prepared to go -- of

17 course, you know, it was rejected and, you know, of course,

18 you know, we were -- we had jury selection set for the 5th.

19             THE COURT:  Right.

20             MR. LUJAN:  And so, you know, we were prepared.

21 And then on the 4th, we decided to take it because we were --

22 you know, we entered into a misdemeanor deal simply because of

23 a new discovery that was given to us on the 4th at 2 o'clock

24 that I had not -- we had not previously seen, you know, of an

25 interview of Mr. Babauta's son that occurred on December 2nd.

1    In other words, you know, over a month ago that we were just

2    given that.  And so we came before the Court.

3                THE COURT:  I'm sorry, so you just got that the

4    day before the jury selection?

5                MR. LUJAN:  Yes, Your Honor.  And that's why I

6    told you that -- you know, once we got that I discussed it

7    with my client and his wife and, you know, a decision was made

8    that, you know, of course Mr. Babauta will sacrifice himself

9    to protect his son from the burden of, you know, being

10   cross-examined in Court.

11               And so we did that.  And then we came to Court,

12   you know, with the deal.  And, you know, of course after two

13   and a half hours of -- you know, of discussion between the

14   Court and the government and myself, the Court, you know, said

15   that it was -- you know, it's not accepting the deal yet.  And

16   so the Court was going to bring everyone in and revisit this.

17   And I asked the Court then, you know, if the Court could also

18   revisit the issue of the pretrial diversion, you know.  And

19   that, you know -- and, you know, especially, you know,

20   regarding Mr. Babauta.

21               So, you know, our position, Your Honor, is

22   that -- you know, is that we did have a contract at least with

23   the government.  And I understand that the Court didn't sign

24   off, you know, in our deal.  But also, you know -- you know,

25   our client came in and, you know -- and you know, waived jury

1   trial, you know, it was all -- you know, also performed on

2   that contract by waiving on that -- on the jury -- you know,

3   the jury trial and of course, you know, which resulted not

4   only in a -- what do you call that?  In detriment to him, but

5   a benefit also to the government, because the government did

6   not have, you know, to put on a case that the government

7   itself admits was very, very, very weak case, especially on

8   the -- you know, on the aggravated identity theft.

9           And I believe also, you know, that when I took

10  the Court through what the evidence will show, the Court, you

11  know -- you know, admitted that finally -- you know, finally

12  now, you know, you have a better sense of what the case is all

13  about.  And the Court asked the government, you know, who is

14  more culpable between the two.  And so, you know, of course

15  the government, you know, admitted that Babauta was the less

16  culpable between the two.  And I believe that, you know, there

17  was no dispute by the government that Mr. Babauta is not a

18  person, not one of the people that is prohibited from, you

19  know, receiving any money from Mr. Constantino because, you

20  know, he's not a recruiter, he's not a nominee, and he's not,

21  you know, I believe, a recruiter that has to do with what

22  the -- you know, the initials ADOS.  And I apologize, I can

23  never remember that class, you know.  But he's just not one of

24  those people.

25          And so I believe, Your Honor, you know, that

1   really if anyone -- really, you know, that the Court has more

2   than enough justification to reconsider, you know, and reject

3   our misdemeanor offer and reinstate the offer, you know, for

4   -- you know for pretrial diversion.  Because, you know -- I

5   mean, you know, again, you know -- you know, because.

6   Mr. Babauta really is, you know -- I mean, was not an RA --

7   was, you know, not prohibited from receiving the funds.  And,

8   you know, the only thing he did was he gave, you know, Mr. --

9   you know, under one version, you know, he provided

10  Mr. Constantino, his son's, you know, PII, personal

11  identification information.  That's under one version.  The

12  nominee claims that he gave, you know, the information to

13  Mr. Constantino, which led the government to say, you know,

14  that it'd be pretty hard for them to prove that.

15          So I'm asking that the Court also on the same

16  basis, and I believe, because, you know, of extenuating

17  circumstances, that if the Court is going to allow pretrial

18  diversion, that the Court, you know, reinstate, you know --

19  accept Mr. Babauta's, you know -- you know, deal, you know, on

20  the pretrial diversion with the government.  Thank you, Your

21  Honor.

22          THE COURT:  Thank you.  Okay.  Who wishes to

23  respond?  It will be Ms. David?

24          MR. LUJAN:  Oh, Your Honor, may I just add one

25  more point?

1          THE COURT:  Sure.

2          MR. LUJAN:  Just one more point.  Quick.  I

3    believe that the Court accepting -- the government is not

4    gonna suffer any detriment.  By the Court accepting, you know,

5    the pretrial diversion program, the government is not going to

6    suffer any detriment whatsoever, because the case ends, you

7    know.  And the government will get, you know, the $2,000

8    because that's part of, you know, the deal between both -- you

9    know, in both pretrial diversion cases.  Rather offers.  Thank

10   you.

11         THE COURT:  Yeah, just so you -- as you can

12   recall, my statement was that I'm just looking at the

13   disparity in treatment to, you know, Constantino, Babauta,

14   Apatang-Blas and then even in consideration of the misdemeanor

15   thefts in the Navy Exchange.  Those type of diversion

16   proposals.  And so I'm looking at it a little more globally

17   rather than isolated, but I appreciate your argument,

18   Mr. Lujan.

19         MR. LUJAN:  Okay, thank you, Your Honor.

20         THE COURT:  Yes, Ms. David?  You may proceed.

21         MS. DAVID:  Your Honor, my response will be

22   brief.  With respect to the pretrial diversion agreement

23   referenced by counsel on behalf of Franklin Babauta, the

24   record shows that that agreement had been denied by the Court,

25   especially in light of the fact that a condition of this

```
1   pretrial diversion agreement required approval, for example,

2   from the U.S. Probation Office who was going to also

3   participate during the time period of the agreement.  That

4   approval had not been secured.

5               And the facts show and the records support that

6   the agreement that Mr. Lujan has referenced has already been

7   denied and what's presently before the Court with respect to

8   Defendant Babauta is the filed plea agreement filed

9   January 4th of this year.

10              THE COURT:  What about his request though to

11  reconsider the diversion in light of the arguments made by --

12  well, all of the arguments made.  And most especially the one

13  critical argument, if you will -- I shouldn't say critical,

14  but one of the arguments that Mr. Lujan makes is that

15  prosecution had indicated that really Constantino is more

16  culpable than Babauta.

17              So if Mr. Constantino is more culpable than

18  Mr. Babauta -- okay, previously, that wasn't my understanding,

19  but now that -- then it was at a later hearing, then why is

20  Mr. Constantino -- why does he get the benefit of diversion

21  and Mr. Babauta doesn't?  What about that?  What about that

22  argument?  Which is something that I asked you earlier too.

23              MS. DAVID:  Your Honor, the pretrial diversion

24  agreement as to each of the defendants was really conditional

25  on Court approval.  I think that was part of -- that was the
```

1    procedure known to all the parties.  Court approval, whether

2    it is approval by Your Honor or Court approval in the sense of

3    approval by the U.S. Probation Office, which is part of this

4    Court.

5              THE COURT:  Right.

6              MS. DAVID:  That procedure and that step was made

7    known to all the parties in -- in discussions with the

8    pretrial diversion agreement.  Sure, as a matter of fairness,

9    both were offered to each defendant, but in light of the turn

10   of events and the Court's concerns and the Court's denial of

11   Mr. Babauta's earlier pretrial diversion agreement and.

12   Mr. Babauta's subsequent acceptance of a misdemeanor plea

13   agreement offer, as a matter of fairness, given the facts of

14   this case, the government respectfully cannot proceed and go

15   forward with a pretrial diversion agreement as to Defendant

16   Ambrosio Constantino.  All the parties --

17             THE COURT:  You mean Babauta?

18             MS. DAVID:  Yes, Your Honor.  As to each

19   defendant, Your Honor.

20             THE COURT:  Well, that's a different issue as --

21   on the diversion issue, that's a different issue for the Court

22   to consider as it relates to Constantino.  But the only

23   question really is:  Should the Court reconsider diversion in

24   light of the statements made -- I guess, let me back it up.

25             Let me just say, is the prosecutor saying that

1    they do not want to grant -- they do not want to -- even if

2    the Court were to reconsider diversion, I'm not sure if I can,

3    unless you offer it.  I'd have to think about that.  But he's

4    asking me to reconsider it in light of the statements that you

5    made that Babauta is less culpable than Constantino.

6              MS. DAVID:  We have reconsidered and decided it's

7    no longer on the table with respect to Mr. Babauta.  And

8    that's reflected by the actions of the government in offering

9    a misdemeanor plea agreement.  That's reflected by the actions

10   of the defendant in accepting it.  So what the purpose of this

11   hearing, as I understand it, for Mr. Babauta is whether or not

12   we go forward with a change of plea hearing based on the

13   agreement that's currently filed on January 4th.

14             THE COURT:  Okay.  So the answer is no, the Court

15   should not reconsider it and by the way, the Court doesn't

16   really have authority to reconsider it because we're not

17   re-offering it?

18             MS. DAVID:  That's correct, Your Honor.

19             THE COURT:  Okay.  And the only thing that you're

20   offering to Mr. Babauta right now is a misdemeanor plea deal?

21             MS. DAVID:  That's correct, Your Honor.

22             THE COURT:  So that's subject to the Court's

23   approval.

24             MS. DAVIS:  Thank you.

25             THE COURT:  Thank you, Ms. David.

1          All right, Mr. Lujan, you may respond.

2          MR. LUJAN:  Yes, Your Honor.  Your Honor, our

3    position is that the Court does have the power to reconsider

4    because the Court was asked that and I believe -- and the

5    Court has not --

6          THE COURT:  I'm sorry, the Court was what?

7          MR. LUJAN:  Was asked that last week.  Or this

8    week, right?  I think Tuesday.  And so, you know, we believe

9    that, you know, of course there's a pending motion and, you

10   know -- and, you know, one of the factors really for the Court

11   to consider of course is whether the government wants to

12   continue offering.  But you know -- but I believe that, you

13   know, in one of the government's argument is that the Court

14   did not accept it and so what the Court -- rather, the

15   government is saying in my opinion is that the government is

16   saying, you know, technicality should trump fairness and

17   justice.

18          The government is saying that Mr. Babauta is less

19   culpable but, you know -- and so -- but because the Court

20   didn't accept that, you know, we don't want to offer it again,

21   we don't want to offer it again even though we know he's less

22   culpable than the co-defendant.  So you know -- and the

23   government says to the Court that, you know -- and it talks

24   about fairness.  I really believe, you know, that the

25   government should go to a dictionary and look what the meaning

1    of the word "fairness" is.

2              How do you give, you know, a -- more, you know, a

3    -- a -- a, you know, more, I guess, serious deal to a

4    co-defendant who is less culpable and give a better deal to a

5    defendant who the government says is more culpable?  That's

6    not fairness.  And I believe, you know, that the Court, in the

7    interest of justice, has the ability to say that, No, I'm

8    gonna recommend it.  Or, you know -- you know, regardless of

9    what the government is saying, because the Court -- as the

10   Court has said and what begun all this -- you know, Your

11   Honor, the Court's assessment of, you know, Is the government

12   being fair in how it deals with a different classes of

13   defendants that are coming before the Court, you know, on the

14   same issue.

15             And I believe that the Court, you know -- that,

16   you know, the Court is right, correct, that the government

17   needs to be fair and that the government has now demonstrated

18   that it doesn't have the ability to be fair.  Because it wants

19   to use technicality, you know -- you know, to deny re-offering

20   a deal that they know he deserves, because the government is,

21   you know, in essence conceding that the more culpable

22   defendant is okay to give that person, you know, the diversion

23   program.  That's my response, Your Honor.

24             THE COURT:  Thank you.

25             MR. LUJAN:  Thank you, Your Honor.

1          THE COURT:  Ms. David, you want to respond to

2    that?

3          MS. DAVID:  Yes, Your Honor.

4          THE COURT:  Okay.

5          MS. DAVID:  Your Honor, the record in both these

6    defendants' cases has shown that the government indeed did

7    offer the same proposed disposition as to -- as to both

8    defendants, but with the Court's denial of Mr. Babauta's

9    pretrial diversion agreement --

10          THE COURT:  And I did that.  No, I did that based

11    on -- as I was listening to you all comparing the factual

12    basis submitted by you and the other prosecutor, Ms. San

13    Nicolas, in the Babauta case, you know, I was trying to assess

14    who was more culpable and that's why I didn't accept the plea

15    agreement for the misdemeanor of Mr. Babauta because I was

16    concerned at that point, well, why should Mr. Babauta get a

17    higher, a more serious offer than Mr. Constantino if the

18    prosecution is saying that he's actually less culpable.

19          MS. DAVID:  Right.  Which is why, in all

20    fairness, the government --

21          THE COURT:  No, that's why I rejected the plea

22    agreement.  But with regard to the diversion, you know, as I

23    listen to you all , when we heard about Constantino, I had

24    heard, Hey, Constantino really is the lesser -- less culpable

25    defendant in this matter.

1          Which is it?  Is it really Constantino?  Is it

2     really Mr. Babauta?

3          MS. DAVID:  Your Honor, may I just inquire when

4     you made the comment as to having rejected the plea agreement,

5     was it Your Honor's -- did Your Honor mean to say you have

6     rejected the pretrial diversion agreement?

7          THE COURT:  Well, I rejected -- actually I

8     rejected the diversion agreement and I said with regard to the

9     plea agreement as of the day -- as -- was that Tuesday?

10         MS. DAVID:  Yes, Your Honor.

11         THE COURT:  On the 5th.  I said as of that time I

12    was not accepting it and I wanted to at least consider what's

13    going on with Constantino.  I mean, I want to look -- you

14    know, when I sentence somebody -- you know this, Ms. David,

15    you've been a lawyer a long time, when the Court considers the

16    culpability of each defendant, we look at who's the leader,

17    who's the key leader and so forth, who's the soldier and

18    whatever variation in-between in terms of the ranking of

19    culpability.

20         And so I really wanted to try to understand that

21    also in comparison not only to each other, Mr. Babauta and

22    Mr. Constantino, but also in regard to Mr. Gorman's client,

23    Apatang-Blas.

24         MS. DAVID:  But with respect -- in response to

25    counsel's recent comments, I would just simply say that this

1  case --

2           THE COURT:  You mean, Mr. Lujan's comments?

3           MS. DAVID:  Mr. Lujan's comments.  I would just

4  simply say that the same offer had been given to both his

5  client and Mr. Constantino -- and Mr. Fisher's client, but

6  because of the change in circumstance where the Court had

7  denied Mr. Babauta's pretrial diversion agreement, to be fair

8  as -- which is indeed the issue that the Court raised, based

9  on the facts of this case, we -- as Ms. San Nicolas indicated,

10  we can't go forward with a similar pretrial diversion

11  agreement as to Defendant Constantino.

12           THE COURT:  Okay.  So you hear Mr. Lujan

13  passionately yelling in the microphone -- I'm not teasing you,

14  Mr. Lujan, but you were pretty loud -- that technicality

15  trumping justice and fairness.  What about the --

16           MS. DAVID:  I --

17           THE COURT:  No, no.  I'm not saying I agree or

18  disagree with him.  That's just his argument.  But I'm saying,

19  with regard to that argument, what about the issue that it has

20  been said that Mr. Constantino is less culpable and so

21  therefore, why shouldn't his client really be given -- now

22  that we know this , it's all out here in Court, why shouldn't

23  he also be given the reconsideration of diversion and have the

24  Court reconsider that or have the prosecutor, I'm sorry,

25  reoffer it?  I'm not telling you to do it, because you can do

1  whatever you want to do in term of offers.  Once you do it, it

2  comes into the Court jurisdiction to decide whether or not to

3  accept it.

4          What about that argument?  I'm talking -- just

5  focus on the culpability.

6          MS. DAVID:  And Your Honor, the facts don't

7  support that especially in light of Ms. Villagomez's comment

8  earlier in an earlier proceeding as to the reason for having

9  rejected -- having rejected such proposal as to Mr. Babauta.

10         THE COURT:  No, she doesn't reject, she doesn't

11 offer or accept.  This has nothing to do with them accepting

12 or rejecting an offer.  The only thing that they take care of,

13 Probation, is whether or not they can accept or reject a

14 person as a suitable candidate for supervision.  Not --

15         MS. DAVID:  Correct, Your Honor.

16         THE COURT:  Not whether or not the Court -- they

17 have no -- I'm sorry, it's not within their purview to accept

18 or reject an offer of diversion or a plea agreement.

19         MS. DAVID:  And Your Honor, because of --

20         THE COURT:  So don't blame my probation officer.

21         MS. DAVID:  I'm not, Your Honor.

22         THE COURT:  Sounds like you are.

23         MS. DAVID:  As I understand the pretrial

24 diversion agreement as each defendant and counsel understood

25 the pretrial diversion agreement, there are steps that have to

1   be accomplished; one of which includes a review and assessment

2   of the U.S. Pretrial Services Office or the U.S. Probation

3   Office.

4           THE COURT:  Yeah, but here's the problem for you

5   to say that, that's true, but what is also true is that you

6   guys haven't figured out your internal operations.  So that's

7   why Ms. Rossanna Villagomez-Aguon can't really sign off on

8   this because she's waiting for you guys to figure out what is

9   the internal operation.  So if it was all done and if it was

10  all taken care of -- and I know you're still in the process of

11  doing that, then that would be a good argument but it's not.

12  It's just something -- right?  I mean, especially felony ones

13  here in the -- up here on the 4th floor.

14          MS. DAVID:  So the question whether or not a

15  pretrial diversion offer should be --

16          THE COURT:  Re-offered and reconsidered by the

17  Court.  That's what he's asking in light of the comments made

18  that his client is less culpable.

19          MS. DAVID:  We view that with the misdemeanor --

20  with a now misdemeanor plea offer that's presently before the

21  Court.

22          THE COURT:  Okay.  So the answer is no, don't do

23  it.

24          MS. DAVID:  With respect to the pretrial

25  diversion agreement?

1          THE COURT:  Right, for Mr. Babauta.

2          MS. DAVID:  Yes, Your Honor.

3          THE COURT:  Okay.  Yeah, Mr. Lujan, hold on.

4     Ms. Limtiaco, our U.S. Attorney, wants to speak.

5          Yes, Ms. Limtiaco?

6          MS. LIMTIACO:  Thank you very much, Your Honor.

7          THE COURT:  Okay.  Hold on a second.  I do have

8     an appointment but I'm just -- yeah, sorry.

9          MS. LIMTIACO:  Yes.  Thank you very much, Your

10    Honor.  I just would like to perhaps briefly clarify the

11    record and then of course proceed further.

12          One of the points, Your Honor, that the

13    government wishes to emphasize is that with regard to

14    Mr. Babauta and to Mr. Constantino, these cases were evaluated

15    diligently and very seriously based on the facts and the

16    evidence in those specific cases.  And as we know here in the

17    Court's own career and experience, we handle and we address

18    these cases case by case.

19          We can have cases that are two cases that have

20    the exact same charges, but their dispositions can range from

21    probation to life imprisonment even though on its face they

22    may appear, based on the documentation, to have the same or

23    similar facts.  But again, given the assessments internally by

24    the government, just as the defense also conducts their own

25    assessments internally, and we have protected privilege work

1  product which cannot be disclosed to each other and are, in

2  fact, protected to even be disclosed to the Court, we make our

3  decisions again strictly based on the evidence.  At no time --

4           THE COURT:  Unless of course there's a waiver.

5           MS. LIMTIACO:  It --

6           THE COURT:  Depending on the situation.

7           MS. LIMTIACO:  Depending on the situation, Your

8  Honor.  But in terms of these cases, I do want to emphasize

9  that certainly was based on the evidence.

10           THE COURT:  Okay.

11           MS. LIMTIACO:  And at no time was there any

12  consideration in terms of the offering of these -- of this

13  particular plea offer to these individuals, to Mr. Babauta,

14  Mr. Constantino, was it based on their rank.  So I just want

15  to clarify that point, Your Honor.

16           THE COURT:  Okay.  But I will tell that -- it was

17  told to me that that was a factor in the offer given to the

18  defendants when I asked specifically that question:  Was that

19  a factor in offering diversion to a lieutenant colonel, a

20  major, and a sergeant?  And the answer was it was not a

21  conclusive factor but it was a factor.

22           MS. LIMTIACO:  And Your Honor, to clarify, it is

23  our understanding that I believe Ms. David -- Attorney David

24  tried to clarify what she was trying to represent to the Court

25  and perhaps, in the representation, could have been more

1   clear.  But what the government wants to express very clearly

2   today is that certainly the offers of diversion to Mr. Babauta

3   and Mr. Constantino were not offered because of their rank

4   within the organization of the National Guard.

5               THE COURT:  Okay.  Well, that's good to know.

6   All right.

7               MS. LIMTIACO:  These cases, Your Honor, obviously

8   involve, generally speaking, charges that are brought against

9   soldiers.  And in of themselves, if there was ever an

10  accusation that the government was looking at something other

11  than the evidence just bringing these cases alone indicate

12  that the government is blind to the rank of the individuals

13  and is strictly looking at the evidence in pursuing them.  And

14  so I want to make sure that's clear.  As we say, you know,

15  justice is blind in terms of not looking at criteria that

16  would favor or bias for or against a particular individual.

17              THE COURT:  All right.  So you can see though

18  that my impression though at the time -- and now that you're

19  discussing this it's a little different, but at the time that

20  it was presented, that if you have a lieutenant colonel and a

21  major who get a diversion and a sergeant who's been in for six

22  years and other higher-ranking officials that have been in

23  longer, they obviously would be more experienced, they would

24  know the way things are run with regard to this program, as

25  opposed to somebody who's been in less time.  So I was

thinking along that line, as I am considering the disparity or

non-disparity in the diversion and/or plea agreement and

sentencing.  Just so that you understand, that's where I was

coming from as I was evaluating it, and listening to the

prosecutors come before the Court.

MS. LIMTIACO:  Thank you, Your Honor.  And again,

I just want to make sure that it's very clearly stated on the

record that, again, these -- these particular cases were

evaluated strictly based on the evidence.  And the plea offers

were made strictly based on the evidence and --

THE COURT:  I accept that, Ms. Limtiaco.  You're

a fine lawyer, so I accept that.

MS. LIMTIACO:  Thank you very much, Your Honor.

The other point, Your Honor, is that at the time that the

Court had determined, based on the arguments made by counsel

last week with regard to Mr. Babauta and at the time the Court

had decided based on those arguments and representations that

it would not accept the pretrial diversion plea, the

government had to take a step back because certainly we want

to consider the Court's concerns, the Court's questions and

make a determination truly in the interest of fairness and

justice, what our -- what our next step would be.

THE COURT:  But let me just tell you, I

understand that, but I think if I'm not mistaken that I did

not know that there was this position that Mr. Babauta was

1  less culpable until after I had -- I had rejected the

2  diversion agreement.  I did not know that until Tuesday.  I

3  think that's -- is that right, Mr. Lujan?

4                MR. LUJAN:  That's correct, Your Honor.

5                THE COURT:  Yeah.  So I was not armed with that

6  information.

7                MS. LIMTIACO:  And so then, Your Honor, at this

8  point, because certainly given even the -- since the arguments

9  that were made last week and certainly the information that

10 the Court is saying is now before the Court, and because the

11 government had been relying last week on the Court's rejection

12 of the pretrial diversion agreement for Mr. Babauta, again in

13 trying to proceed forward, in trying to prepare for what was

14 going to then happen with Mr. Constantino's case we needed to

15 do a reassessment, and certainly we have communicated with his

16 counsel, with of course Mr. Fisher and Mr. Lujan over time.

17 But I think what the government would now respectfully ask of

18 the Court, given sort of the events that are taking place just

19 at this hearing alone, is whether or not the Court is inclined

20 to reconsider its initial rejection of the pretrial diversion?

21               THE COURT:  Are you inclined to re-offer it to

22 him?

23               MS. LIMTIACO:  Well, Your Honor, we're trying --

24               THE COURT:  Let me just say, that's an executive

25 -- I respect that.  So that's an executive decision to offer

1   the diversion.  And I was just told that -- your prosecutor

2   was just up here and I said, Do I have the authority?  And

3   they said, No, we're not gonna do it, you don't have the

4   authority.

5           I was under the impression I do not have the

6   authority to reconsider something that I've already rejected.

7   And it's something that you -- you're not re-offering because

8   the prosecutor is standing by the plea agreement.  That's what

9   the prosecutor said.

10          MS. LIMTIACO:  And perhaps, Your Honor, we can

11  clarify.

12          THE COURT:  Okay.

13          MS. LIMTIACO:  It would seem that the Court would

14  not have the authority necessarily to -- not to reconsider

15  because the Court has certainly the authority to reconsider

16  any ruling and decision that it makes, and so perhaps the

17  clarification would be that, yes, if an offer had not been

18  made, then how could the Court reconsider something that is

19  not actually on the table at this point in time.  However,

20  what the government would like to seek clarification from the

21  Court --

22          THE COURT:  I already rejected it though.

23          MS. LIMTIACO:  Right.  Well --

24          THE COURT:  I did.  I said I would not accept it.

25  I said that but based on information that I had at the time.

1          MS. LIMTIACO:  Okay.  But the government

2    respectfully asks the Court -- because it will make --

3    obviously, it is something -- it is a matter that the

4    government would consider.  We want to be responsive also to

5    the Court's concerns and questions.

6          So we would ask:  Is the Court inclined to

7    reconsider its initial decision regarding the rejection of the

8    pretrial diversion of Mr. Babauta, which is actually what

9    Mr. Lujan is arguing for?

10          THE COURT:  That's right.

11          MS. LIMTIACO:  And so --

12          THE COURT:  Very vigorously.

13          MS. LIMTIACO:  Because if the Court is inclined

14   to do that, given, as the Court says in light of recent

15   information, that the Court was not aware of previously, that

16   has made an impact or at least has caused the Court to pause,

17   then certainly what the government will do is we would

18   respectfully ask for a recess, a short recess, so that we can

19   at least confer with defense counsel and have some discussion

20   here, because the government's position regarding the

21   misdemeanor plea, Your Honor, with Mr. Babauta is based on our

22   reliance that the Court had made its determination and issued

23   an order, in a sense, to reject that particular -- and --

24          THE COURT:  I did.

25          MS. LIMTIACO:  Particular plea.  So certainly, we

1    can't go against the Court's order.

2              THE COURT:  All right.  We'll take a recess.  Let

3    me just tell you a couple things though, and it still concerns

4    me.  I mean, you know, putting aside this messy situation, I

5    would say it's messy.  Putting that aside right now, I still

6    have a concern honestly about the disparity in treatment

7    regarding Mr. Gorman's client, Apatang-Blas.  I will tell you

8    that now.  Even though she has pled guilty to felony -- a

9    felony, she was charged with the same felony, she's already

10   been sentenced, it still bothers me.  So consider that.  Let's

11   take a recess.  I do have -- I gotta tell you, I'm sorry I

12   have a 1 o'clock meeting, in which I'm late for, in Harmon, I

13   think, or Tamuning.  Anyway, I have a 1 o'clock meeting which

14   I'm late for.

15             Can we come back in this afternoon?  After you

16   guys meet?

17             MS. LIMTIACO:  Yes, Your Honor.  And if I may --

18             THE COURT:  Is that okay with you Mr. --

19   Ms. Limtiaco?

20             MS. LIMTIACO:  Yes, Your Honor.

21             THE COURT:  And Mr. Fisher?

22             MR. FISHER:  Yes, Your Honor.  I would ask for

23   late this afternoon though.

24             THE COURT:  What time?

25             MR. FISHER:  Four o'clock.  Is that too late?

1          THE COURT:  Is 3 o'clock okay with you?  I have

2    to take care of my mother.

3          MR. FISHER:  Okay.  Three o'clock.

4          THE COURT:  Mr. Lujan, three o'clock?

5          MR. LUJAN:  Of course, Your Honor, whatever you

6    want.

7          THE COURT:  Three o'clock okay with you?

8          MS. LIMTIACO:  Three o'clock is fine.

9          THE COURT:  Is that okay with Ms. Limtiaco?

10          MS. LIMTIACO:  Yes, Your Honor, and certainly

11    with both government attorneys.

12          THE COURT:  So I honestly -- please bear that in

13    mind, that is one of my biggest concerns, honestly.

14          MS. LIMTIACO:  And Your Honor, we appreciate the

15    Court's concern.  And again, we would say that, generally

16    speaking, not focusing on a particular case, but generally

17    speaking, of course, the government's position is going to be,

18    Your Honor, that we have assessed our cases based on the

19    evidence, and that there are distinctions that are made,

20    evidentiary wise, between various cases and that is what is

21    then brought before the Court.  And so I just want to make

22    sure I clarify our --

23          THE COURT:  All right, I respect that.  Thank you

24    very much, Ms. Limtiaco, for coming.  Thank you everybody.

25    I'll see all of you at 3 o'clock.

1          Actually, can we make it 2 o'clock?  2:30?  Oh,

2     sorry, 3 o'clock is fine.  My staff just told me I got

3     something else at 3 o'clock.  Thank you.

4               MR. LUJAN:  Thank you.

5               THE COURT:  All right.  Take care.

6               (Recess taken at 12:50 p.m. until 4:26 p.m.)

7               THE COURT:  Please be seated.  We're back on the

8     record in *United States of America versus Constantino and*

9     *Babauta.*

10              All counsels are present.  Defendants are

11    present.  And U.S. Attorney Limtiaco, Ms. David, Criminal

12    Chief, and Rosetta San Nicolas are also present.  And

13    Mr. Brooks is also present and Mr. Lujan.  Okay.

14              The Court had a meeting in chambers at the

15    request of the parties.

16              So just to memorialize our meeting again, to just

17    reiterate the same things that went on this morning.  The

18    Apatang-Blas case was a traditional G-RAP case.  And in the

19    case at bar, you know, there was all the same issues about the

20    difference between Apatang-Blas -- actually, in her case, the

21    regular recruiter passed personal information -- personal

22    identifying information to Apatang-Blas and she received money

23    from the recruiter.  She's not supposed to do so.  She

24    received the money and she was not supposed to.

25              And in the case at bar, the personal identifying

1   information was not necessarily stolen by Babauta, the father.

2   He actually already had the information and he was given

3   advice from the regular career recruiter to try to apply to be

4   an RA.  When he was unsuccessful, he was told to get -- he was

5   told by the regular recruiter to get someone else to recruit

6   him.  Mr. Constantino was, this is all allegedly, the one to

7   recruit.  And the regular recruiter said --  advised Mr.

8   Babauta that he can get that information -- he can pass that

9   information or receive monies and so forth.

10          So there was just some issues about the evidence.

11  It was just reiterated.  But all in all, the -- I was told by

12  the U.S. Attorney's Office that it's their position that

13  diversion offer was given to both defendants, Mr. Constantino,

14  Mr. Babauta, because they felt that after their evaluation of

15  all the evidence in the case, under the totality of the

16  circumstances, that it would be fair and reasonable.

17          Now, I hope I'm not misstating anything, but I

18  don't know.

19          Ms. David, did you want to comment on that

20  particular part with regard to why you offered diversion to

21  both?

22          Did I state that correctly, is it how you put it?

23          MS. DAVID:  Yes, Your Honor.  As to all the

24  parties' review and assessment of the strength and weaknesses

25  of the case, we focused strictly on the evidence that would

1    have come out or may still come out at trial.

2              THE COURT:  Okay.  And so what are you requesting

3    that this Court do at this time then, based on -- I guess you

4    had a -- you all met, the defense counsels --

5              MS. DAVID:  Yes, Your Honor.

6              THE COURT:  -- and U.S. Attorneys?

7              MS. DAVID:  With respect to Mr. Babauta, before

8    the Court recessed this morning, it was the government's

9    impression that perhaps the pretrial diversion offer that the

10   government had previously made and indeed signed would still

11   be up for consideration by this Court.

12             THE COURT:  Well, it's definitely being requested

13   that it be reconsidered by the defense counsels.  So are you

14   joining in that reconsideration request?

15             MS. DAVID:  Yes, Your Honor.

16             THE COURT:  Okay.  On Babauta.

17             What about Mr. Constantino?

18             MS. DAVID:  With respect to Mr. Constantino, I

19   understand that a pretrial diversion agreement had been -- had

20   been offered and indeed signed.  And our review of the record

21   reflects that it had already been considered by the Court and

22   accepted by the Court.

23             THE COURT:  Hm-hmm.  So do you withdraw your

24   request to withdraw the --

25             MS. DAVID:  Yes, Your Honor.

1              THE COURT:  -- the Constantino diversion

2    agreement?

3              MS. DAVID:  That is correct, Your Honor.

4              THE COURT:  So you're asking the Court then to

5    consider diversion on both cases?

6              MS. DAVID:  As the government had initially

7    proposed to the parties and to the Court and to the U.S.

8    Probation Office, we made that offer from the very beginning

9    based on the evidence in this case, based on what we believe

10   is fair and a just disposition in this case.

11             THE COURT:  All right.  Mr. Fisher?

12             MR. FISHER:  Yes, Your Honor.

13             THE COURT:  Comments or statements?

14             MR. FISHER:  May I approach?

15             THE COURT:  Yes, please do.  Thank you.

16             MR. FISHER:  Really don't have much to elaborate

17   on what the United States said.  We think that the -- we would

18   like to go forward with diversion.

19             THE COURT:  Okay.

20             MR. LUJAN:  Thank you.

21             THE COURT:  And Mr. Lujan?

22             MR. LUJAN:  Your Honor, of course we were the

23   ones that asked the Court to reconsider and obviously we stick

24   to our position and we join in the -- you know, government's

25   -- you know -- I guess offer, you know, for the Court to

1  accept the pretrial diversion regarding Mr. Babauta.

2          THE COURT:  Okay.

3          MR. LUJAN:  Thank you, Your Honor.

4          THE COURT:  All right.  Thank you.  So what I'm

5  gonna do is I'm gonna hold this matter under advisement until

6  Monday morning at 10:15.  I'll make my decision then.  The

7  reason why is I do want to really evaluate the issue of

8  culpability.  You all have indicated your position, as I

9  understand it, from in chambers, Mr. Lujan and Mr. Fisher

10 believe that neither of their clients are culpable in terms of

11 their mental state.  And as I understand it from the U.S.

12 Attorney's Office, I don't want to put words in your mouth.

13          What did you want to say to that?  Because that

14 is the one issue I'm gonna review, and also the consideration

15 of the Apatang-Blas case, those are the two issues I'm gonna

16 review.  But go ahead.

17          MS. DAVID:  Based on the government's initial

18 position from the very beginning offering these defendants

19 pretrial diversion, we believe -- we believe that this is a

20 fair disposition and we respectfully request that as to Mr.

21 Babauta, which is pending before the Court, that the Court

22 respectfully reconsider and consider the arguments all counsel

23 made to the Court, in previous hearings as well as in

24 chambers.

25          We simply believe based on our evaluation of the

1    facts in this case as they -- and as they continue to develop

2    during trial preparation that the outcome that all the parties

3    before this Court are proposing is fair.

4               THE COURT:  Initially, Ms. David, on Tuesday, as

5    you will recall, when I asked you that question of who was

6    more culpable, because I do evaluate that very seriously in

7    all the cases, as you know, and as Ms. San Nicolas knows, you

8    said that they were equally as culpable and then you changed

9    your mind and you said Mr. Constantino was more culpable.

10              What is your position now as I review this

11   diversion?

12              MS. DAVID:  Your Honor, I think they are equally

13   culpable.  And without Mr. Constantino being able to access

14   the G-RAP program, there wouldn't have been the success of

15   obtaining the referral bonus without Mr. Babauta's

16   participation in this whole nomination process in providing

17   his son's personal identification information, there would not

18   have been a nomination to begin with.  So I believe, Your

19   Honor, based on the facts, that they are both equally

20   culpable.

21              THE COURT:  Okay.

22              MS. DAVID:  Thank you.

23              THE COURT:  Thank you, Counsels.

24              MS. DAVID:  Your Honor, as a housekeeping matter,

25   and this is something Mr. Lujan and I informed the Court in

1    chambers, with respect to Mr. Babauta's case, we do still have

2    potential witness schedules.

3                 THE COURT:  Right.

4                 MS. DAVID:  Conflicts in witness schedules,

5    depending on whether or not trial will proceed.  And it's my

6    understanding Mr. Lujan and I can work on providing the Court

7    with a stipulation as to the next alternative trial date.

8                 THE COURT:  That's right.  The Court will allow

9    that, right, Mr. Lujan, you have no objection to that?

10                MR. LUJAN:  That's correct.

11                THE COURT:  All right.  So on Monday, the Court

12   will make its decision regarding whether or not it will accept

13   the diversion agreement and the plea agreement -- and/or the

14   plea agreement, not and, but or the plea agreement.

15         If I deny both, then the matter will be set for trial

16   and then we will get a trial date that will reflect the

17   availability of the prosecutor's witnesses.

18                MS. DAVID:  Thank you, Your Honor.

19                THE COURT:  And as I understand it, you have

20   prosecutor witnesses here now and you want them to be released

21   until the next trial date.

22                MS. DAVID:  Yes, Your Honor, may they be excused?

23                THE COURT:  And they're off-island witnesses?

24                MS. DAVID:  Yes, Your Honor.

25                THE COURT:  Right.  No objections, Counsels?

1          MR. LUJAN:  None, Your Honor.

2          THE COURT:  All right.  Very well.  No objection?

3          MR. FISHER:  No, Your Honor.

4          THE COURT:  So the Court will allow that the

5    witnesses be released until the next date.  And if it's a

6    trial date, we'll -- they can come at that trial date.  Okay?

7          MS. DAVID:  Thank you, Your Honor.

8          THE COURT:  All right.  Thank you, everyone, have

9    a nice evening and I'll see all of you 10:15 Monday morning.

10   Thank you, take care.

11

12          (Proceedings concluded at 4:37 p.m.)

13                      * * *

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER


CITY OF HAGATNA      )
                     )  ss.
TERRITORY OF GUAM    )


      I, Veronica F. Reilly, Official Court Reporter for the United States District Court of Guam, do hereby certify the foregoing pages, 1 to 57, to be a true and correct transcript of the proceedings held in the above-entitled matter.

      Dated this 20th day of January, 2016.


                    /s/Veronica F. Reilly
                    Veronica F. Reilly