IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 15-00029-1, |
| | ) and 15-00029-2 |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| AMBROSIO D. CONSTANTINO, JR., | ) |
| and FRANKLIN R. BABAUTA, | ) |
| | ) |
| Defendants. | ) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FRANCES TYDINGCO-GATEWOOD
CHIEF JUDGE
JANUARY 11, 2016; 10:30 A.M.
HAGATNA, GUAM

**Status Hearing**

Proceedings recorded by *mechanical stenography*, transcript
produced by computer.

Veronica F. Reilly, CSR No. 2004
Federal Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: MARIVIC DAVID, AUSA,**
**ROSETTA SAN NICOLAS, AUSA,**
**ALICIA LIMTIACO, USA**
108 Hernan Cortez Avenue
Sirena Plaza, Suite 500
Hagatna, Guam 96910


Appearing on behalf of defendant Babauta:


**LAW OFFICE OF LUJAN & WOLFF**
**BY: DAVID J. LUJAN, ESQ.**
DNA Building, Suite 200
238 Archbishop Flores Street
Hagatna, Guam 96910


Appearing on behalf of defendant Constantino:


**LAW OFFICE OF FISHER & ASSOCIATES**
**BY: THOMAS J. FISHER, ESQ.**
Suite 101, De La Corte Building
167 East Marine Corps Drive
Hagatna, Guam 96910


ALSO PRESENT:

Joe Strantz, FBI

Rossanna Villagomez-Aguon, Probation (via VTC)

I N D E X

                                                                 Page

The Court rejects the plea agreement and the
diversion agreements                                             11

Jury selection and trial date set for
January 20, at 10:00 a.m.                                         13

Veronica F. Reilly, CSR No. 2004
Federal Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

1          **January 11, 2016; 10:30 a.m.; Hagatna, Guam**

2                              * * *

3          THE CLERK:  Criminal case number 15-00029, *United*

4  *States of America versus Ambrosio D. Constantino, Jr., and*

5  *Franklin R. Babauta;* Status hearing on agreement for pretrial

6  diversion or agreement for plea agreement.

7          Counsel, please state your appearances.

8          MS. SAN NICOLAS:  Buenas yan hafa adai, Your

9  Honor.  Rosetta San Nicolas on behalf of United States.  Your

10  Honor, Alicia Limtiaco, U.S. Attorney for the District of Guam

11  and Northern Mariana Islands is also present.

12          THE COURT:  Okay, good morning.

13          MS. DAVID:  Good morning, Your Honor.  Marivic

14  David for the United States.

15          THE COURT:  Good morning, U.S. Attorney Limtiaco,

16  Ms. David and Ms. San Nicolas.

17          MR. FISHER:  Good morning, Your Honor.  My name

18  is Thomas Fisher.  I'm an attorney representing Mr. Ambrosio

19  Constantino who is standing here to my right.

20          THE COURT:  Good morning, Mr. Fisher and

21  Mr. Constantino.

22          MR. LUJAN:  Morning, Your Honor.  David Lujan

23  with Mr. Babauta.

24          THE COURT:  Okay, good morning Mr. Lujan,

25  Mr. Babauta.  What is that noise?

```
1              Rossanna, you're there -- Rossanna?

2              PROBATION OFFICER:  Yes, I am, Your Honor.

3              THE COURT:  Okay, thank you.  All right.
```
Ms. Villagomez-Aguon, our chief probation officer and pretrial

officer is here as well via VTC.  You're in Saipan, aren't

you, Rossanna?

```
7              PROBATION OFFICER:  Yes.  Yes, ma'am.

8              THE COURT:  You are.  All right.  Ready to
```
proceed, Counsels?

```
10             MS. DAVID:  Yes, Your Honor.

11             MR. LUJAN:  Yes, Your Honor.

12             THE COURT:  All right.  What is before the Court
```
is the issue of whether the Court should reconsider the

diversion offered by the United States Attorney for

Mr. Constantino, and this is Mr. Fisher's client.  And the

second matter before the Court is the motion to reconsider

diversion offer issued by the -- sorry, offered by the United

States Attorney's for Mr. Babauta, Mr. Lujan's client, or in

the alternative, on Mr. Babauta, the United States Attorney's

offered to have Mr. Babauta plead to a misdemeanor theft.

All right.  So these are the three matters before

me, and I -- you know, I wanted to take the weekend to review

this very carefully.  And so here are my concerns about these

particular matters and I'll issue my decision as well.

First of all, this is the sixth hearing that

1  we've had on this matter for both defendants.  We have two

2  hearings on Mr. Constantino, one was a diversion hearing heard

3  earlier and a status hearing with Mr. Babauta, jointly held on

4  Friday, January 8th.

5          And then there were three hearings held with

6  regard to Mr. Babauta.  The first hearing was a diversion

7  hearing, the second hearing was on the date of the trial, jury

8  selection and trial date.  And the hearing dealing with the

9  misdemeanor plea offer.  And a third hearing was a joint

10  status hearing held January 8th with Mr. Babauta.

11          The Court notes that -- let's see, all five

12  hearings, and we've had three different U.S assistant -- two

13  assistant U.S. attorneys and the U.S. Attorney involved in all

14  three of -- in all of these hearings at some point or the

15  other and I think the U.S. Attorney came in at the last

16  hearing, which was the fifth hearing held January 8th, as I

17  recall.

18          On the Constantino matter, it was Assistant

19  Attorney San Nicolas.  And then on the Babauta matter, in

20  terms of the lead prosecutor, it was Ms. David, Assistant U.S.

21  Attorney.

22          So the first thing is just having all these

23  different hearings trying to resolve this issue, what to do

24  with this case.  We have jury selection and trial pending for

25  both defendants, a speedy trial clock of course is tolled at

1  this time based on the filings before the Court.

2          As I indicated, today is the sixth hearing.  And

3  then the other concern I have is the culpability issue that

4  has been somewhat confusing, I think -- I think, personally,

5  or just listening to the U.S. Attorney's office coming into

6  the Court, the Court was led to believe, as it relates to

7  Mr. Constantino, that at the first hearing, Constantino was

8  likely the least culpable.  It only -- money had only

9  exchanged with him like the amount of $200, it was his first

10 offense.  And there was a change in evidence, as I recall, in

11 the Constantino first hearing where it was told to the Court

12 by the prosecutor, San Nicolas, that -- that William R.

13 Babauta, the nominee, had changed his testimony and was now

14 recanting some matters.

15         And then the Court was led to believe at the

16 Babauta hearing, the Babauta diversion hearing, that

17 Mr. Babauta actually was the lesser culpable between the two,

18 between himself and Constantino.

19         Initially, the prosecutor in that matter,

20 Ms. David, had indicated they were equally culpable, then she

21 immediately changed that and said, no, Constantino was

22 actually -- I'm sorry, Mr. Babauta was actually less culpable.

23 And then we come into the fifth hearing, which was

24 January 8th, and now the Court is being told that Constantino

25 and Babauta are equally culpable.

1        So I just believe that based on, you know, we

2   have three prosecutors in this matter, six hearings, and this

3   issue of who's culpable, I just -- I'm not confident that they

4   know who's less culpable and the Court -- of course the Court

5   is most concerned about this issue of disparity in treatment,

6   in terms of offers and also in sentencings, which is something

7   that all judges are concerned about.

8        It leads me to believe that the U.S. Attorney's

9   office is confused about the facts of the case or even their

10  assessment of the case.  I -- I don't know if that's just a

11  matter of -- I'm not sure what it is.  I can't say why that --

12  where that source of confusion comes from, but it's clear to

13  me that there is a source of confusion there.

14        Now, another -- the fourth concern that I have is

15  diversion in felony cases, diversion and felony cases have not

16  been allowed or even really considered here in the District

17  Court all the time that I've been here.  It has been something

18  that is a little more common downstairs in the misdemeanor

19  court with Judge Manibusan.  And the -- Mr. Constantino

20  happened to be the first one batter up -- first one up to bat

21  on this issue of felony diversion.  And so as I reviewed the

22  diversion plea offer by the United States Attorney's office at

23  the time and I thoroughly discussed the procedure with my

24  Chief Probation and Pretrial Officer, Ms. Rossanna

25  Villagomez-Aguon, who's on the video here and who's been

conferring with me, even as of yesterday she conferred with me
while I was here at court over this issue.  She had indicated
that there's never been anything really in writing pursuant to
an official pretrial diversion program with the United States
Attorney's office and the U.S. and pretrial office itself.

            And so Ms. Villagomez-Aguon had given me sometime
ago when I was considering Mr. Constantino's diversion, the
diversion offer.  She had given me copies of the office of the
United States Attorney's manual dealing with pretrial
diversion program, which is actually on the website and it was
easy to find and what the purpose is, eligibility criteria and
so forth.  And it was discovered at that time.  And I think we
discussed this pretty -- the Court discussed this at some
point with Ms. San Nicolas about, you know, where were these
procedures and it appeared -- it was shown to the Court that
there has been no procedure that has been specifically
established, and so maybe that's -- the reason why there's a
source of confusion in diversion here at this Court at my
level, at the felony level, is because there's nothing in
writing.

            And so the operations manual, it appears,
requires some kind of memorandum of understanding with the
United States Attorney's office and the U.S. Probation, some
kind of internal agreement, and that's not been in existence
as far as I'm -- as far as I know.  And can I just reconfirm

1    that with Rossanna Villagomez-Aguon; is that correct, what

2    I've just said?

3            PROBATION OFFICER:  That is correct, Your Honor.

4    There is no operations agreement between the U.S. Attorney's

5    office and our office.  We've basically been accepting the

6    misdemeanor cases for diversion because of those cases.

7            THE COURT:  So it appears that -- diversion cases

8    in misdemeanor matters down with Judge Manibusan because Judge

9    Manibusan handles the misdemeanor cases, he's been accepting

10   them, I believe, on an ad hoc basis and it's been brought

11   before him.  And so we've had about 60 to 65 of them down at

12   the misdemeanor level in the last ten years.  Is that correct,

13   Ms. Villagomez-Aguon?

14           PROBATION OFFICER:  That is correct, Your Honor.

15           THE COURT:  Okay.  And so again, I wanted to

16   review that as well with her since she is the chief of the

17   probation and pretrial and they would know very intimately who

18   was on diversion in terms of supervised release and who had

19   entered into an agreement with the defense counsel and the

20   U.S. Attorney's office.

21           The fifth concern that the Court had as I thought

22   about this since Friday at our last hearing is something that

23   -- that is critical, I think, to my decision.  It's one of the

24   factors, but it's critical to my decision.  I still believe

25   that there is disparate treatment, even between the

1    Constantino matter and the Babauta matter and the Apatang-Blas

2    case.  And in addition -- excuse me, to the -- let me just get

3    a drink of water.  Hold on.  Excuse me.

4              And just even general misdemeanor petty theft

5    cases where no diversion was allowed in a case where a young

6    man, who I think was 20 years old, had stolen makeup under 20

7    -- $200; the makeup was returned, there was no restitution and

8    no diversion was granted.

9              And so the Court is actually considering that --

10   has considered that as well when I made my decision regarding

11   whether or not to accept diversion in the felony cases.  And

12   under Rule of Criminal Procedure 11(c)(1)(A) where there's an

13   agreement where the government will not move or -- will not

14   bring or will move to dismiss other charges, the Court may

15   under 11(c)(3)(A) may accept this agreement, reject it or

16   defer a decision until the Court has reviewed a presentence

17   report.

18             The Court... hold on one second.  Hold on.  Let

19   me just double-check something.  Okay, so then the Court find

20   -- sorry for that interruption.  Just had to get a message

21   here.  The Court has decided that under 11(c)(1)(A) as I

22   indicated, the Court may accept, reject or defer decision and

23   the Court has decided that it's going to reject the plea

24   agreement and the diversion agreements in this matter.  The

25   Court will state that it definitely understands that it's the

1   prosecutor's discretion absolutely to charge the case,

2   prosecute the case in the manner in which it believes in terms

3   of how the indictment comes down or an information comes down,

4   but the Court wants to let the parties know that I am going to

5   reject it based on those concerns.  Those are concerns that

6   you heard me discuss over the last five hearings, which I

7   can't seem to shake it.  I honestly can't.  And so I am going

8   to reject them, all of them, everything that's before the

9   Court.  And the matter will either go to trial and we'll set

10  that for trial immediately because the speedy trial clock is

11  now ticking again.  Parties can -- or the defendants can plead

12  straight up, renegotiate or however they wish to proceed, both

13  parties.  But the Court will reset the trial date.

14          The Court notes that under Rule 11, I have to

15  inform the parties that I've rejected the agreements which I

16  have.  I have to advise the defendants that the Court is not

17  required to follow the agreements.  And it also says give the

18  defendant an opportunity to withdraw a plea but there's no

19  plea that has been entered into here and advise the defendant

20  if the plea is not withdrawn -- again, this is not really

21  relevant, I'm just gonna say this because it's telling me to

22  -- the Court may dispose of the case less favorably toward the

23  defendant than the plea agreement contemplated.

24          Now, with regard to Mr. Constantino's matter, in

25  fairness to what -- just so that Mr. Fisher can know and his

1  client, the Court notes that when the matter was brought

2  before me, certain factual -- a certain factual basis was

3  presented and then so I relied on that when I said

4  preliminarily that the Court would accept it.  So now that the

5  Court has heard from the three U.S. Attorneys, assistant U.S.

6  attorney, one -- two assistant U.S. attorney, one U.S.

7  attorney, then the Court has decided that based on that, it

8  just doesn't ring true in terms of how -- the reasons for why

9  I accepted it initially.

10           So the Court now will set this matter for trial.

11  How do we proceed?  Who goes first for trial?

12           MS. SAN NICOLAS:  Your Honor, we request the

13  Defendant Ambrosio Constantino's matter be scheduled first.

14           THE COURT:  Okay.  Okay.  Let's set this then.

15  How about January 20th, at 10:00 a.m.?  We're okay on the

16  speedy trial clock with this date, right?  January 20th at

17  10:00 a.m., Mr. Fisher?

18           MR. FISHER:  Yes, Your Honor, I don't have my

19  calendar in front of me, but we'll be prepared on

20  January 20th.

21           THE COURT:  Okay, so jury selection and trial

22  date will be January 20th at 10:00 a.m.  My jury commissioner

23  -- or administrator is here.  We'll have the jurors come into

24  Court on that date.  We'll send you the names, right?  It will

25  be pretty much be the same, right?  Why don't we call in extra

1   if we need to.  All right.  And then with regard to

2   Mr. Babauta's matter, Ms. --

3               MS. DAVID:  Your Honor, we ask that that follow

4   shortly thereafter.

5               THE COURT:  Like right after, like within a few

6   days after?

7               MS. DAVID:  Yes, Your Honor.

8               THE COURT:  Mr. Lujan?

9               MR. LUJAN:  Your Honor, we do have -- we do have

10  -- we proffered a plea agreement to the Court, but what I'd

11  like to do is, you know, with the Court's consent, is allow me

12  and Mr. Babauta to discuss whether we want to proceed forward

13  with that, because, you know, that agreement is still pending

14  as far as I'm concerned.  The government has signed off on

15  that.  And, you know, and we've signed off and the Court has

16  not rejected that misdemeanor plea agreement.  And so --

17              THE COURT:  I -- I -- I did, I just rejected it.

18              MR. LUJAN:  Oh, I thought you only rejected the

19  superseding.

20              THE COURT:  No, no, no.  No, I rejected it just

21  based on everything that's happened, I have rejected that

22  today and the two diversion agreement -- the two diversion

23  offers by the U.S. Attorneys.

24              MR. LUJAN:  Okay.  So --

25              THE COURT:  Sorry.  Maybe you didn't hear me.  So

1  what about her proposal for the trial date?  I know you

2  indicated to me that you have a trial date before -- or

3  closing argument before Judge Anita Sukola.

4          MR. LUJAN:  On the 20th.

5          THE COURT:  Okay. So --

6          MR. LUJAN:  And, Your Honor, I guess we can

7  follow right after Constantino.

8          THE COURT:  Okay.  So we'll make that back to

9  back.  How long will Constantino take, Ms. San Nicolas?

10         MS. SAN NICOLAS:  Your Honor, we estimate three

11 days.

12         THE COURT:  Three days?  We'll do that, so three

13 days.  January 20th is a Wednesday?  So we'll have the Nats --

14 I mean not Nats, January 20th will be the jury selection

15 trial.  We'll do Nats ceremony is at 9:30?  Oh, yeah, that's

16 gonna be hard for you, isn't it?  Yeah, because you have to

17 have jurors and the new citizens, right?  Yeah, that's a

18 little crazy.  Can we do it on the 21st?  January 21, the

19 trial?  We're okay on speedy trial?  How many days left?  So

20 let's do the trial on January 21.

21         Mr. Fisher, is that okay with your schedule?

22         MR. FISHER:  It is, Your Honor.

23         THE COURT:  Okay, and then Mr. Lujan, I suspect

24 that you know you may start as early as January 27th.  Why

25 don't we just tentatively say January -- let's give a day in

1    between and January 28.  How's that?

2                MR. LUJAN:  That's fine, Your Honor.

3                THE COURT:  Mr. Lujan?

4                MR. LUJAN:  That's fine, Your Honor.

5                THE COURT:  That's just because we have to let

6    jurors know as well.

7                MR. LUJAN:  Sure.  And that would be 9:30, Your

8    Honor?

9                THE COURT:  Right.  9:30 a.m., Merle?  Sorry,

10   10:00 a.m. for both of them.  Ten a.m., because the jurors

11   usually come in about 7:30.  They come in and have

12   orientation.  Oh, 8 o'clock, from eight to ten.  Anything

13   else, Counsels?

14               Mr. Lujan, anything else?

15               MR. LUJAN:  Just that I'm looking forward to the

16   trial, Your Honor.  Thank you.

17               THE COURT:  Okay, thank you.  Mr. Fisher,

18   anything further?

19               MR. FISHER:  Your Honor, how does the Court

20   conduct the voir dire?  Do you allow Counsel to question or is

21   it primarily the Court?

22               THE COURT:  No, I allow you guys to conduct voir

23   dire.  I have questions, I'll show you my questions that I

24   give, but you are allowed to conduct voir dire, general --

25   open voir dire and individual voir dire.  You may do so.  But

1    just send your questions in if you haven't already done so.

2    Send those in.  I just usually give the general ones, but if

3    you want to, you can.

4            MR. FISHER:  Thank you, Your Honor.

5            THE COURT:  All right.  Thank you, Counsels.  All

6    right.  See you in Court in a few weeks.  Okay, I'm sorry, let

7    me -- jury instructions, have you -- now special jury -- we've

8    already sent you the general jury instructions, opening

9    instructions.  If we haven't, we sent it to both of them?  The

10   Court has sent the opening jury instructions which are Ninth

11   Circuit Criminal Jury Instructions to both the U.S. Attorney's

12   office.  You should have 'em too, right, Ms. San Nicolas and

13   Ms. David?

14           MS. DAVID:  Yes, Your Honor.

15           MS. SAN NICOLAS:  That's correct.

16           THE COURT:  And defense counsel.  So now if you

17   have any special instructions, you don't have to repeat --

18   please don't give me the same Ninth Circuit instructions if

19   I've already given it to you.  If you have any special

20   instructions you want for opening instructions or closing,

21   give those to me, okay?

22           MR. FISHER:  And Mr. Constantino, I think we have

23   filed instructions.

24           THE COURT:  Okay, thank you.

25           MR. FISHER:  And I think U.S. Attorney's did as

1    well.

2            THE COURT:  Right, they have, but if there's any

3    other special ones.  All right?  All right.  Thank you

4    everyone.  Have a nice day.  Take care.

5            THE CLERK:  Court's adjourned.

6            (Proceedings concluded at 10:53 a.m.)

7                         * * *

8         ----------------------------------

9           CERTIFICATE OF OFFICIAL REPORTER

10

11   CITY OF HAGATNA            )
                                ) ss.
12   TERRITORY OF GUAM          )

13

14        I, Veronica F. Reilly, Official Court Reporter for

15   the United States District Court of Guam, do hereby certify

16   the foregoing pages, 1 to 18, to be a true and correct

17   transcript of the proceedings held in the above-entitled

18   matter.

19        Dated this 22nd day of January, 2016.

20

21            /s/Veronica F. Reilly
              Veronica F. Reilly
22

23

24

25